**STATE of Iowa, Appellee,**

v.

**Charles Raymond SCHOELERMAN, Appellant.**

**No. 66751.**

Supreme Court of Iowa.

Jan. 20, 1982.

Rehearing Denied March 12, 1982.

Francis C. Hoyt, Jr., Appellate Defender,
Des Moines, and Charles L. Harrington,

Asst. Appellate Defender, Newton, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., Edward W. Kemp, Cedar County Atty., and Lee W. Beine, Asst. Cedar County Atty., for appellee.

Considered by LeGRAND, P. J., and McCORMICK, ALLBEE, McGIVERIN, and LARSON, JJ.

ALLBEE, Justice.

Defendant appeals from the judgment entered on his plea of guilty to the crime of false use of a financial instrument (FUFI), a violation of section 715.6, The Code 1979.

It is undisputed that on September 1, 1980, in exchange for merchandise and ten dollars in cash, defendant wrote two checks totaling $30.52, drawing on a bank where he had no account. Both checks were nonpersonal counter checks furnished to defendant by the merchant to whom the checks were made payable. Defendant signed his own name to both checks. At his plea hearing, defendant admitted these facts, plus the fact that he wrote the checks with an intent to defraud.

Defendant now contends that these undisputed facts do not amount to a violation of the FUFI statute, and that they merely constitute fifth degree theft under sections 714.1(6) and 714.2(5), The Code 1979. He relies in part on Dunahoo, *The New Iowa Criminal Code*, 29 Drake L.Rev. 237, 392 (1979–80):

> A defendant-maker of a worthless check commits Theft when he signs his own name on a check for which he either has insufficient funds or no account at all. The worthless check constitutes Theft, provided that defendant knows at the time of utterance that the check will not be paid when presented. *In this same set of circumstances, however, the crime of False Use of a Financial Instrument does not occur.* This is because the latter basically is a crime of alteration, as evidenced by "false use" being defined alternatively in terms of the financial

instrument not being "what it purports to be" or of the defendant-user not being "the person authorized to use" it. So, defined, a worthless check signed by the defendant (in his true name) is still what it purports to be, that is, a promise to pay by the defendant.

(Footnote omitted; emphasis added.)

Defendant points out that Iowa's theft by bad check statute specifically applies to the situation where, in the words of the statute, the drawee bank "has refused payment because the maker has no account with the drawee." § 714.1(6). The FUFI statute, however, is applicable to defendant only if a bad check signed in the defendant-maker's own name is "not what it purports to be." § 715.6. Although this court has not yet decided whether the FUFI statute is applicable to such a check, defendant cites numerous cases from other jurisdictions in support of his contention that a check signed in the defendant-maker's own name *is* "what it purports to be," even though the check draws on a bank where the defendant has no account.

FUFI is a class C felony, punishable by a maximum of ten years' imprisonment and a fine of up to $5000. §§ 715.6, 902.9(3), The Code 1979. Fifth degree theft by bad check is a simple misdemeanor, punishable by up to thirty days' imprisonment or a fine of up to $100. §§ 714.2(5), 903.1(3), The Code 1979. Pursuant to his plea of guilty to the FUFI charge, defendant was sentenced to a term not to exceed ten years; probation was denied on the basis of a presentence report.

At defendant's plea hearing, in attempting to ascertain a factual basis for defendant's plea of guilty to the FUFI charge, the trial judge asked defendant if he knew that the check he wrote "was not what it purported to be, *in other words, an instrument which could draw on an account that you had* at the Union Trust & Savings Bank?" (Emphasis added.) Defendant responded: "Correct." Neither defense counsel nor the trial judge mentioned the possibility that theft, rather than FUFI, was the appropriate charge. The judge presiding at the

sentencing hearing, however, did comment that "[t]en years for this seems to be kind of a harsh sentence. These aren't large checks."

After accepting defendant's guilty plea, trial court informed him, as required by Iowa R.Crim.P. 8(2)(d), that he had a right to challenge any errors in the plea proceeding by filing a timely motion in arrest of judgment and that failure to do so would waive his right to make any such challenge on appeal. No such motion was made.

On appeal, defendant asserts that there was no factual basis for his plea of guilty to the FUFI charge and that his plea was involuntary and unknowing because both defense counsel and the trial court misinformed him that FUFI was the applicable offense. He also contends that he was denied effective assistance of counsel. The State argues that the ineffective assistance of counsel claim should not be adjudicated upon this direct appeal, and that defendant's failure to challenge trial court's acceptance of his guilty plea by a motion in arrest of judgment, as required by Iowa R.Crim.P. 23(3)(a), precludes his raising the other issues.

## I.   Ineffective assistance of counsel.

█   Because defendant was informed by trial court as to the necessity of filing a motion in arrest of judgment, see State v. Worley, 297 N.W.2d 368, 370 (Iowa 1980), there is no basis for suspending the application of Iowa R.Crim.P. 23(3)(a) and considering the merits of this appeal unless defendant's failure to move in arrest of judgment resulted from ineffective assistance of counsel. The test we apply in determining the latter question is "whether under all the circumstances counsel's performance was within the range of normal competency." Hinkle v. State, 290 N.W.2d 28, 30 (Iowa 1980).

█   Ordinarily, the record on a direct appeal is insufficient to allow us to adjudicate a claim of ineffective assistance of counsel. State v. Coil, 264 N.W.2d 293, 296 (Iowa 1978). In such cases, it is preferable

that the claim be litigated in postconviction proceedings, see State v. Williams, 285 N.W.2d 248, 271 (Iowa 1979), cert. denied, 446 U.S. 921, 100 S.Ct. 1859, 64 L.Ed.2d 277 (1980), especially where the attorney's actions or omissions may be explainable as a matter of trial tactics or strategy, or where there is a need for additional evidence concerning what other lawyers would have done under similar circumstances. We have stated on numerous occasions that improvident trial strategy, miscalculated tactics or mistakes in judgment do not necessarily amount to ineffective assistance of counsel. E.g., Sims v. State, 295 N.W.2d 420, 423 (Iowa 1980).

█   In the present case, however, the record is adequate to allow us to adjudicate the matter of trial counsel's effectiveness, and we believe nothing would be gained by requiring a further hearing on the question. Cf. State v. Hendren, 311 N.W.2d 61, 63–64 (Iowa 1981) (record on direct appeal was adequate for supreme court to find ineffective assistance of counsel where attorney failed to cross-examine witnesses or make closing argument after defendant voluntarily absented himself from trial).

█   The record here shows that trial counsel never, during defendant's guilty plea hearing or otherwise, raised the issue of whether defendant was guilty of fifth degree theft rather than FUFI. It may be that trial counsel did not raise that issue because he was unaware of the theft by bad check statute, section 714.1(6), and therefore had little or no reason to question the propriety of the FUFI charge. If that was the case, we believe trial counsel's lack of knowledge or preparation would place him below the "range of normal competency" in his representation of defendant. A normally competent attorney who undertakes to represent a criminal defendant should either be familiar with the basic provisions of the criminal code, or should make an effort to acquaint himself with those provisions which may be applicable to the criminal

acts allegedly committed by his client.[1] *See Iowa Code of Professional Responsibility for Lawyers*, Canon 6, DR 6–101(A)(2) ("A lawyer shall not . . . [h]andle a legal matter without preparation adequate in the circumstances.").

On the other hand, if trial counsel was aware of the theft by bad check provision, he would have been confronted with two statutes, one containing concrete language *specifically* applicable to his client and carrying a maximum thirty-day sentence, the other containing broader language *possibly* applicable to his client and carrying a maximum ten-year sentence. Under these circumstances, even if he was uncertain as to which statute applied, trial counsel had a duty to at least raise the issue of whether defendant had been mischarged with the more serious offense. *See Iowa Code of Professional Responsibility for Lawyers*, Canon 7, EC 7–3 ("While serving as advocate, a lawyer should resolve in favor of his client doubts as to the bounds of the law."). The question is not, as the State contends, whether a normally competent attorney might have concluded that FUFI was an appropriate charge; rather, it is whether a normally competent attorney could have concluded that the question of fifth degree theft by bad check was not worth raising.

We recognize that an attorney need not be a "crystal gazer" who can predict future changes in established rules of law in order to provide effective assistance to a criminal defendant. *See Snethen v. State*, 308 N.W.2d 11, 16 (Iowa 1981) (trial counsel was not ineffective for failing to raise issue which would have been foreclosed by Iowa case law existent at time of trial, although the law was later changed). Here, however, there were no decisions of this court which foreclosed the issue in question, and indeed the specificity of the language in the theft by bad check statute would have lent substantial weight to an argument that defendant had been mischarged. Furthermore, had trial counsel consulted cases from other jurisdictions, he would have found little or nothing to discourage him from raising the issue.[2]

In short, we can conceive of no valid justification for trial counsel's failure to question whether his client had been mischarged. Even if it could be argued that such an omission would be justifiable as an intentional measure to obtain a favorable plea agreement for the defendant, we note that the plea agreement in this case was of little or no benefit to defendant.[3] This fact should have been apparent to defense counsel at least by the time of the plea hearing, when he still had an opportunity to withdraw from the plea agreement and to raise the issue noted above.

1. While the trial judge appeared to be similarly unaware of the potential applicability of the theft by bad check statute, we recognize that busy trial judges cannot be expected to do counsel's preparation for them, and that they must often rely on counsel to point out issues that are not readily apparent from a reading of the specific statute under which a criminal defendant is charged.

2. On the contrary, he would have found that the clear weight of authority *favored* his client's position. *See* Division II, *infra*. In addition, Dunahoo's commentary on the new Iowa criminal code, quoted earlier, was published several months before defendant's plea hearing. We do not suggest, however, that trial counsel was ineffective by reason of his failure to discover that law review article or the favorable authority from other jurisdictions. There was every reason for counsel to question the appropriateness of the FUFI charge solely on the basis of reading the relevant Iowa Code provisions.

3. In return for his plea of guilty to FUFI, defendant obtained no reduction of his charge, and no promise of a favorable sentencing recommendation. The State agreed only (1) to make *no* sentencing recommendation, and (2) not to prosecute defendant for any other bad checks known to the State at the time of the plea bargain. At the plea hearing, however, in response to questioning by the court concerning the plea agreement, the county attorney acknowledged that there were no other potential bad check charges that he was aware of, and defense counsel stated that that was his understanding also. Thus, defendant gained *nothing* from this plea agreement that would justify counsel's advising his client to plead guilty to a class C felony without raising the issue of whether his client was actually guilty of only a simple misdemeanor.

We therefore hold that defendant's failure to file a motion in arrest of judgment resulted from denial of his constitutional right to effective assistance of counsel. Accordingly, we will consider the merits of his appeal without regard to Iowa R.Crim.P. 23(3)(a).

## II. *Propriety of the FUFI charge.*

We must next decide whether writing a check on a bank where the defendant-maker has no account constitutes the crime of false use of a financial instrument (FUFI) if the defendant signs the check in his own name.

The FUFI offense is defined as follows in section 715.6, The Code 1979:

> The use of a financial instrument with the intent to obtain fraudulently anything of value by one who knows that the instrument is not what it purports to be, or who knows that he or she is not the person nor the authorized agent of the person who, as shown on the instrument, has the right to so use the instrument, *shall constitute the false use of a financial instrument. False use of a financial instrument is a class "C" felony.*

(Emphasis added.) Defendant's charge was based on the emphasized portion of this statute; thus, the remaining language, which sets forth an alternative method of committing the crime, is not involved here. We note that a check is included within the definition of a "financial instrument." § 715.1(1), The Code 1979. The phrase "not what it purports to be" is not expressly defined.

Under Iowa's theft statute, theft is committed when a person

> [m]akes, utters, draws, delivers, or gives any check, draft, or written order on any bank, person or corporation, and obtains property or service in exchange therefor, if the person knows that such check, draft or written order will not be paid when presented.
>
> . . . .
>
> Whenever the drawee of such instrument has refused payment *because the maker has no account with the drawee,* the court or jury may infer from such fact that the maker knew that the instrument would not be paid on presentation.

§ 714.1(6), The Code 1979 (emphasis added). As noted earlier, theft in the amount involved here ($30.52) would constitute fifth degree theft, which is a simple misdemeanor. § 714.2(5), The Code 1979.

The theft by bad check provision is basically a recodification of the former crime of false drawing or uttering of checks, sections 713.3–.4, The Code 1977. The main difference between the two provisions lies in the formulation of the *mens rea* requirement. The former statute required proof of a specific intent to defraud, whereas the present statute focuses instead on guilty knowledge, *i.e.,* knowledge that the check will not be paid when presented. *State v. Smith,* 300 N.W.2d 90, 92–93 (Iowa 1981).

The FUFI provision is a consolidation of a number of forgery and forgery-related offenses which previously appeared in various parts of the Code. Note, *False Use of a Financial Instrument,* 60 Iowa L.Rev. 548, 548 (1975) (from a symposium on the then-proposed revision of Iowa's criminal code). The goal was to combine in one offense all crimes which have a similar type of adverse impact on the integrity of the financial system, and to provide a single penalty for all such equally culpable acts. *Id.* at 548, 549, 551. One of the main purposes of this consolidation was to eliminate overlap and duplication, and thereby to avoid problems faced by prosecutors in deciding which forgery-related statute to rely upon in charging a particular criminal defendant. *Id.* at 550, 555.

The foregoing information concerning the background and purpose of the consolidated FUFI offense indicates that the legislature did not intend to include within that offense the writing of a check, signed by the defendant-maker in his own name, which draws on a bank where the defendant has no account. First, as will be shown, the writing of such a check is generally not considered to constitute forgery or a forgery-related offense. Second, the legisla-

ture's goal of eliminating overlap and duplication by way of a consolidated FUFI offense would not be served if the FUFI statute, as well as the more specific theft by bad check statute, applied to the writing of such a check. Finally, the adverse impact of such a check on the financial system is not of the same type or magnitude as that involved in the passing of a forged or altered check. Each of these factors will be discussed separately below.

## A.

The background of the common law offense of forgery is explained in the following excerpt:

> The term forgery was first applied to the making of an instrument which falsely purported to be that of another. In *Queen v. Ritson* the crime was extended to include the falsification of a date which was material to the authenticity of the document. To negate any implication that forgery was to include all misrepresentations made in legal or commercial documents, the English court expressly distinguished a false deed from a deed containing false statements.
>
> . . . [T]he *Ritson* limitation restricts the severe sanctions of forgery statutes to instances in which a person is misled by the instrument itself rather than by the faith placed in its maker[.]

Casenote, 72 Harv.L.Rev. 566, 567 (1959) (footnotes omitted).

In accordance with the above-noted distinction, the majority of pertinent cases have held that the maker of a check which draws on a bank where he has no account or insufficient funds does not commit forgery if he signs the check in his own name. *E.g., Melvin v. United States,* 316 F.2d 647, 648 (7th Cir. 1963); *Wright v. United States,* 172 F.2d 310, 311–12 (9th Cir. 1949); *Greathouse v. United States,* 170 F.2d 512, 514 (4th Cir. 1948); *Winston v. Warden, Nevada State Prison,* 86 Nev. 33, 35, 464 P.2d 30, 32 (1970).

In *Wright,* for example, the court said:

Here, appellant drew the checks on an existent bank and signed them in his own true name. There was nothing fictitious about them. *They were exactly what they purported to be.* namely, written requests by appellant to the drawee bank to pay a specified sum of money to a third person or to his order. It may well be said that, by implication, they falsely represented that appellant had sufficient funds in the drawee bank to pay them upon their presentation, and the facts will support an assumption that he intended to use them to defraud, but that does not justify classifying the checks as "falsely made" or "forged[.]"

172 F.2d at 311–12 (emphasis added).

Regarding a check written on a nonexistent bank, another court said: "Such a check *is precisely what it purports to be* with falsity entering the picture only in the implied representation that the maker has moneys on deposit from which the check would be paid." *Melvin,* 316 F.2d at 648 (emphasis added). To the same effect is *Winston,* 86 Nev. at 35, 464 P.2d at 32: "One who signs his true signature to a check upon a bank in which he has no checking account is not guilty of forgery. The instrument is genuine, even though the statements in it are false."

*In re Clemons,* 168 Ohio St. 83, 151 N.E.2d 553 (1958), appears to be the only case which holds that the writing of such a check constitutes forgery. That case was subject to a vigorous dissent and has also been criticized by commentators. *See* 72 Harv.L.Rev., *supra* ; Casenote, 45 Va.L. Rev. 286 (1959).

■ Thus, by the weight of authority in other jurisdictions, the writing of a check signed in the defendant-maker's own name, but drawing on a bank where the defendant has no account, is not considered forgery. Such a check is viewed as being "what it purports to be." [4] What Iowa authority

4. While we do not mean to suggest that the consolidated FUFI offense is no broader than the traditional forgery offense, we do believe the authorities discussed above are relevant in interpreting the FUFI statute, which was intended to replace the forgery offense in Iowa.

there is suggests that the same would be true under the new FUFI statute. Directly on point is the commentary from Dunahoo, *The New Iowa Criminal Code*, 29 Drake L.Rev. 237, 392 (1979–80), quoted near the beginning of this opinion. Also somewhat relevant are the Iowa Court of Appeals decision in *State v. Sanders*, 309 N.W.2d 144 (Iowa Ct.App.1981) and the commentary from 4 J. Yeager & R. Carlson, *Iowa Practice* (1979) quoted therein. These latter authorities suggest that the FUFI statute maintains the traditional focus on the falsity of the instrument itself.

### B.

■ Because the FUFI statute was designed to eliminate overlap and duplication, it would be strange to find that an offense subsumed in the new provision was also allowed to retain a separate existence elsewhere in the Code. As noted earlier, the FUFI offense stands side-by-side with a theft provision, § 714.1(6), which specifically applies to the writing of a check which draws on a bank where the maker knows he has no account. We believe the retention of this bad check provision indicates that the legislature did not intend to include the writing of such a check within the FUFI offense. Any other conclusion would defeat the legislative purpose of eliminating statutory duplication and its troublesome effect on the prosecutorial charging decision.

### C.

■ As stated previously, a major goal of the FUFI statute was to consolidate offenses which have an equivalent adverse impact on the financial system. A check signed in the maker's own name, even though it draws on a bank where the maker has no account, has a lesser adverse impact on the commercial system than, for example, a check signed or endorsed in the name of another person, or a check payable to a person who has altered the amount thereof. The former fraud is generally more easily detectable than those latter-mentioned, and its perpetrator more readily identifiable.

*See* 72 Harv.L.Rev., *supra*, at 567. Therefore, we may logically conclude that it was not intended to be included in the FUFI offense. *See* 4 J. Yeager and R. Carlson, *supra*, § 365.

### III. *Conclusion.*

Based on the discussion in Division II, we hold that when a person writes a check on a bank where he knows he has no account, but signs the check in his own name, he is guilty of theft pursuant to section 714.1(6), but *not* of false use of a financial instrument, section 715.6 (FUFI). The "not what it purports to be" element of the FUFI offense is lacking in the case of such a check.

■ Accordingly, we hold that there was no factual basis shown for defendant's plea of guilty to the FUFI charge. In this case, unlike others where a factual basis is found lacking, there is no point in remanding because it is clear that no such factual basis can be shown; defendant was simply charged with the wrong offense. Therefore, we reverse defendant's conviction, vacate trial court's judgment, and order that the charge against defendant be dismissed.

REVERSED; JUDGMENT VACATED; CHARGE DISMISSED.