**STATE of Iowa, Appellee,**

v.

**Terry A. BOLINGER, Appellant.**

**No. 89–606.**

Court of Appeals of Iowa.

June 26, 1990.

Scot M. Halverson, Leon, for appellant.

Thomas J. Miller, Atty. Gen., Mark Joel Zbieroski, Asst. Atty. Gen., and Robert Fulton, County Atty., for appellee.

Heard by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

OXBERGER, Chief Judge.

On October 26, 1988, Terry Bolinger entered the Decatur County State Bank in Grand River to open a new checking account. Bolinger asked the only employee on duty if he could use a telephone to obtain an authorization number for a money transfer from NTS in Fort Worth, Texas. NTS is a money transfer system whereby truckers may fill out blank drafts for a specified amount of money from accounts set aside by employers so that the truckers can receive money for their trips as needed. When presented to a bank or other place where one may cash checks, a call must be made to NTS to obtain the authorization number before any money can be withdrawn.

The employee of the Bank testified at Bolinger's trial that she saw Bolinger make the call, and that it appeared to be consistent with someone obtaining an authorization number. Bolinger then offered the draft to the employee to open up his account. The employee did not call NTS to verify the account, but did verify by driver's license Bolinger's identity. The employee then cashed the draft for $400, placing $250 in the new account and giving Bolinger $150 in cash. Approximately ten days later NTS informed the Bank that the draft would not be honored.

Bolinger was subsequently arrested and charged with theft by bad check and forgery, for both passing and authenticating the NTS draft. At trial, Bolinger argued that because he did not misrepresent his identity or authority, other than that the check was good, he could not be guilty of forgery. Bolinger also argued that the bank draft he used specifically and boldly warns that the draft was not to be cashed before calling NTS. Therefore, Bolinger argued, he could only be guilty of misleading the Bank into thinking that a call had been made.

The case was subsequently submitted to the jury, which returned a guilty verdict on the class "D" forgery charge and two counts of theft. Bolinger received a five-year sentence on the forgery charge, and two years on each of the theft charges.

The trial court denied Bolinger's post trial motions. Bolinger has appealed. We affirm.

■■■ Our standard of review is well settled. A verdict will be upheld where there is substantial evidence to support the charge. *State v. LeGear*, 346 N.W.2d 21, 23 (Iowa 1984). Substantial evidence means such evidence as could convince a rational trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* When reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the State, including all legitimate inferences and presumptions which may fairly and reasonably be deduced from the evidence in the record. *State v. Bass*, 349 N.W.2d 498, 500 (Iowa 1984). We must consider all the evidence and not just the evidence supporting the verdict. *Id.*

Bolinger first contends that the trial court erred in overruling his prior motion for directed verdict and for entry of judgment of acquittal on the grounds that his actions did not constitute forgery under Iowa Code section 715A.2(1)(b). Bolinger maintains that while the State proved that he had the intent to defraud the Bank, his actions were in no way an attempt to misrepresent actions of another. Bolinger argues that he did not purport to be someone else, and therefore his acts could not constitute forgery. Bolinger also argues that he had a right to fill out the draft in any manner he saw fit; only the recipient's phone call would reveal whether the draft was good. We disagree.

Pursuant to Iowa Code section 715A.2(1)(b), a person is guilty of forgery if the person "[m]akes, completes, executes, authenticates, issues, or transfers a writing so that it purports to be the act of another who did not authorize the act," coupled with the requisite intent or knowledge to defraud or injure someone.

Section 715A.1 defines a "writing" as "including printing or any other method of recording information, and includes money, coins, tokens, stamps, seals, credit cards, badges, trademarks" and other symbols of value.

Pursuant to section 715A.2(2)(a), forgery is a class "D" felony if the writing is or purports to be a "check, draft, or other writing which ostensibly evidences an obligation of the person who has purportedly executed it or authorized its execution."

Since Bolinger admits that the State proved he falsely represented to the Bank employee that the draft was good and that it was in writing, we must determine whether the draft was authenticated in a manner purporting to be the acts of another.

Bolinger relies on *State v. Schoelerman*, 315 N.W.2d 67 (Iowa 1982), to support his contention that since he signed his own signature to the draft, he cannot be guilty of forgery. In *Schoelerman*, the defendant had written two counter checks drawing on a bank where he had no account. 315 N.W.2d at 70. The defendant was ultimately charged and convicted of false use of a financial instrument. *Id.* The Iowa Supreme Court reversed the defendant's conviction, holding that the signing of the check in his own name but drawing on a bank where he had no account did not constitute forgery.

■■ In the present case, however, the evidence introduced at trial reveals that Bolinger feigned the telephone call to NTS. Bolinger had no account with either the trucking company or NTS. Pursuant to the type of transfer system involved here, the trucking company, through NTS, is the payor and the truck drivers merely the payees. The draft presented to the Bank employee was not negotiable until the authorization number was obtained through NTS. Thus the draft presented to the Bank employee was purported by Bolinger to be authorized by NTS, even though NTS would not have authorized the transaction had the employee made the call. The employee did not personally call NTS since she had been falsely led into believing Bolinger had already called NTS for the authorization number. Additionally, Bolinger had informed the Bank employee, and an officer of NTS testified at trial, that either the payee or the cashing institution could

call for the authorization number. Bolinger thus forged the authorization number of NTS, which was the actual payor, on behalf of the trucking company.

■ Bolinger also argues that his acts did not constitute felony forgery because the draft did not ostensibly evidence an obligation of any *person.* We find this argument to be without merit. Iowa Code section 4.1(13) defines "person" as meaning a corporation, government, business trust, partnership, association, or other legal entity. Though the legislature did not specifically include a corporation in section 715A.2(2)(a), we believe that a corporation could be a person as contemplated by section 715A.2(2)(a) in view of section 4.1(13).

■ Bolinger next claims that he should have instead been charged with unlawful use of a credit card in violation of Iowa Code section 715A.6 and therefore not a class "D" felony. Bolinger contends that the draft he used was in actuality a credit card as defined in Iowa Code section 715A.1(2) and that he obtained money knowing the use of the credit card was unauthorized or forged. Because this issue was raised for the first time on appeal, we need not consider it. *State v. Tobin,* 333 N.W.2d 842, 844 (Iowa 1983).

Bolinger also contends that the trial court erred in refusing his proposed instruction stating that "[f]orgery cannot be committed by oral misrepresentation or deceptions even if they are made with the intent to defraud." Jury Instruction No. 9 as submitted by the trial court stated:

> Count I charges the defendant with the crime of forgery. The State must prove all of the following elements of forgery:
> 1. On or about October 26, 1988, Terry Bolinger authenticated a draft.
> 2. Without the authority of NTS, Incorporated Bolinger made the draft appear to be the act of NTS, Incorporated.
> 3. Terry Bolinger intended to defraud or injure Decatur County State Bank.
> If the State has proved all of these elements, the defendant is guilty of forgery. If the State has failed to prove any one

of these elements, the defendant is not guilty.

Bolinger argues his proposed instruction would have better informed the jury that "authenticating" a draft does not include making oral misrepresentations that the draft is good.

■ We note, however, that the record reveals no requested instructions were filed with the trial court by Bolinger until just before arguments to the jury were to begin. It is thus apparent the proposed instruction was presented to the court almost at the time the case was to be submitted to the jury. Our courts have recognized that where a defendant has committed or invited the alleged error, he or she will not be permitted to complain of any error. *State v. DeWitt,* 286 N.W.2d 379, 383 (Iowa 1979); *State v. Hinkle,* 229 N.W.2d 744, 750 (Iowa 1975).

■ We further note that this issue was not raised at the trial court level. Bolinger instead raised several unrelated matters. A defendant cannot announce one reason for objection at trial and then on appeal rely on a different one to challenge an adverse ruling. *State v. Bean,* 239 N.W.2d 556, 561 (Iowa 1976).

■ Even assuming, *arguendo,* that error had been properly preserved, our examination of the submitted instructions convinces us that the marshaling instruction in question was substantially similar to the form suggested by Iowa's Uniform Jury Instructions. *See* II Iowa Criminal Jury Instruction No. 1500.2 (1988).

■ In general, "we disapprove uniform instructions reluctantly." *State v. Doss,* 355 N.W.2d 874, 881 (Iowa 1984). A trial court is also not required to instruct in the language of requested instructions so long as the topic is covered. *Id.* We find no error here.

Bolinger lastly contends that the trial court erred in refusing to instruct on the aggravated misdemeanor credit card fraud defined in section 715A.6 as a lesser-included offense of felony forgery. We disagree.

▮ It is possible to commit the greater offense of felony forgery without committing a fraudulent act under section 715A.6(2). Sections 715A.2(2)(a)(b) and section 715A.6(2) provide for separate and distinct definitions of what constitutes a class "D" felony under their respective sections.

Moreover, the forgery charge was based on Bolinger's authentication of the draft and not the use of a credit card. The State had to show that Bolinger had the intent or knowledge to defraud the Bank by "authenticating" the draft. We believe that pursuant to the strict statutory elements approach espoused in *State v. Jeffries,* 430 N.W.2d 728, 736 (Iowa 1988), a felony forgery by use of a draft can be committed without the use of a credit card, and therefore we find no merit to this issue.

AFFIRMED.