# IN THE COURT OF APPEALS OF IOWA

No. 14-1976
Filed April 27, 2016

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**JONATHAN KAY DAVIS,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Story County, Lawrence E. Jahn,

Judge.


     Defendant appeals his conviction for operating while intoxicated

(marijuana), first offense, in violation of Iowa Code section 321J.2 (2013).

**AFFIRMED.**


     John L. Dirks of Dirks Law Firm, Ames, for appellant.

     Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney

General, and Joseph Nehring, Student Legal Intern, for appellee.


     Heard by Potterfield, P.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Jonathan Davis appeals his conviction for operating while intoxicated in violation of Iowa Code section 321J.2 (2013). Davis claims his counsel provided constitutionally-deficient representation in failing to make several interrelated challenges to the statute, the marshaling instruction, and the evidence. Davis also argues the district court abused its discretion in denying his motion for mistrial after one of the State's witnesses testified Davis stated he previously used crack.[1]

In August 2014, Davis was charged with operating while intoxicated (marijuana), first offense, in violation of Iowa Code section 321J.2. The matter was tried to a jury. The trial record showed the following. On August 17, 2014, Davis was driving on Highway 30. Davis passed a pickup truck pulling a thirty-two foot trailer. When Davis's vehicle was approximately twenty to thirty feet in front of the pickup truck, Davis's vehicle drifted onto the left shoulder of the highway. Davis jerked the car to the right, overcorrecting the vehicle and causing it to turn perpendicular to the road. The driver of the pickup truck "hit the brakes hard" and struck the rear fender of Davis's vehicle. Davis's car went into the ditch, and the truck went into the median. The trailer broke from the tow hitch and flipped over. When a witness went to check on Davis, Davis accelerated out of the ditch and left the scene. The witness called 911. As soon as Davis left the

---

[1] Davis asserts for the first time in his reply brief that trial counsel failed to raise an equal protection challenge to the constitutionality of Iowa Code section 321J.2. "Parties cannot assert an issue for the first time in a reply brief." *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 642 (Iowa 1996). We do not consider the issue.

scene, a second witness followed Davis's car down Highway 30, called 911, and directed law enforcement to Davis's location.

Deputy James Schroeder was the first to respond to the scene. With the vehicle's lights activated, Schroeder followed Davis's car for approximately one and one-quarter miles before Davis finally pulled over. While following Davis's vehicle, Deputy Schroeder observed Davis cross the center line. After being stopped and upon being questioned, Davis explained he was trying to find his cigarettes when he lost control of his car. Davis said he had not consumed alcohol but had taken his prescription medication around 4:00 a.m. or 5:00 a.m. that morning. With Davis's consent, Schroeder searched Davis's car and found two pill bottles containing medication prescribed to Davis. Schroeder observed Davis's pupils were constricted and Davis seemed confused.

Deputy Hochberger also responded to the scene. He conducted a roadside impairment evaluation. Hochberger administered a convergence test, designed to determine whether Davis could cross his eyes. Davis showed a lack of convergence, which indicated he was under the influence of central-nervous-system depressants, dissociative anesthetics, inhalants, or cannabis. Hochberger administered a modified Romberg test, in which Davis had to close his eyes, tilt his head back, and estimate when thirty seconds had passed. The results were inconclusive. Hochberger noted Davis had red, bloodshot eyes and constricted pupils. Both are indicia of marijuana use. Hochberger testified he believed Davis to be impaired. Upon request, Davis consented to go to the sheriff's office for further testing.

At the sheriff's office, Deputy Schroeder read Davis the implied consent advisory. Schroeder testified Davis stopped him and stated Davis had smoked marijuana three days earlier. Davis consented to a breath test for alcohol, which showed no measurable quantity of alcohol.

Deputy Elizabeth Quinn, a drug recognition expert, examined Davis at the sheriff's office and requested Davis provide a urine sample. Davis explained to Quinn his left leg had been amputated as a result of peripheral artery disease. Davis told Quinn he was taking the following prescribed medications: hydrocodone, Diazepam, Adderall, Abilify, blood thinner medication, and blood pressure medication. Quinn gave Davis the modified Romberg test. Quinn testified that Davis told her the thirty seconds had passed when only twenty six seconds had passed and that Davis's eyelids tremored during the test. Quinn testified both were consistent with marijuana use. Quinn observed heat bumps on the back of Davis's tongue and a green film on his tongue, which, she testified, are indicia of recent use of marijuana. Davis stated he had been drinking Mountain Dew, which Quinn testified could have been a possible cause of the green film on Davis's tongue. Quinn testified Davis demonstrated a lack of convergence and high blood pressure, which are indicia of marijuana use. Davis told Quinn he had used marijuana three to four days prior to the examination, but he later admitted it was only two days prior.

Susan Fleming, a criminalist with the Iowa Division of Criminal Investigations, performed a preliminary screening test of Davis's urine sample. The urine test was positive for benzodiazepines, opiates, tamazepam, oxazepam, nordiazepam, diazepam, hydrocodone, dihydrocodone, and

marijuana metabolites. Tracy Murano, a criminalist with the Iowa Department of Public Safety Crime Laboratory, ran a confirmation test on Davis's urine sample. Murano confirmed the sample tested positive for 11-nor-9-carboxy-delta-9-tetrahydrocannabinol, which is "a metabolite of THC, a metabolite of marijuana." Murano testified she could not determine when the marijuana had been ingested. She also testified marijuana remains in a person's body longer than other drugs.

During the OWI trial, Deputy Quinn testified the defendant told her that he had previously used crack. She did not identify a date or indicate whether the usage was recent. Defense counsel immediately objected to the testimony and moved for mistrial. The district court sustained the objection, ordered the testimony struck, and admonished the jury to disregard the testimony. The district court denied the motion for mistrial.

The following marshaling instruction (Instruction No. 12) was provided to the jury:

> You must find the defendant not guilty of Operating a Motor Vehicle While Intoxicated, unless the State proves by the evidence beyond a reasonable doubt each of the following elements:
>
> 1. That on or about August 17, 2014, the defendant was operating a motor vehicle in Story County, Iowa; and either
>
> 2. (a) at the time the defendant was under the influence of marijuana; or (b) that at the time the defendant had in his body any amount of marijuana as measured by the Defendant's urine. It is not necessary for all jurors to agree to just (a) or (b). It is only necessary that all jurors agree to at least one of the two alternatives.
>
> If you find the State has proven beyond a reasonable doubt each one of the elements, then you will find the defendant guilty of Operating a Motor Vehicle While Intoxicated; but, if you find the State has failed to prove beyond a reasonable doubt one or both of

the elements, then you shall find the defendant not guilty of Operating a Motor Vehicle While Intoxicated.

The jury was provided with a general verdict form and found Davis guilty. He was convicted and sentenced to one year in jail, with all but seven days of the sentence suspended.

We first address Davis's claim that his counsel failed to provide constitutionally-adequate representation. Our court reviews ineffective assistance of counsel claims de novo. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). Ineffective-assistance-of-counsel claims are normally preserved for postconviction relief actions. *State v. Wills*, 696 N.W.2d 20, 22 (Iowa 2005). This is "particularly true where the challenged actions of counsel implicate trial tactics or strategy which might be explained in a record fully developed to address those issues." *State v. Rubino*, 602 N.W.2d 558, 563 (Iowa 1999). On direct appeal, we will only resolve claims when the record is adequate. *Clay*, 824 N.W.2d at 494. The record is adequate to resolve Davis's claim in this direct appeal.

Davis raises several interrelated claims of ineffective assistance of counsel. He argues his trial counsel should have challenged the constitutionality of the statute because it lacks a mens rea component and because there is no reasonable relationship between the presence of marijuana metabolites in the body of a motorist and the protection of the driving public. He argues his counsel should have objected to alternative (2)(b) of the marshaling instruction, which allowed conviction where "the defendant had in his body any amount of marijuana as measured by the defendant's urine." He argues his counsel should

have introduced evidence showing the metabolites present in Davis's urine were inactive and incapable of causing impairment. While Davis has packaged and repackaged his ineffective-assistance-of-counsel claims in several different boxes, each of the boxes contains the same core argument: section 321J.2 is unconstitutional to the extent a defendant can be convicted merely for having an inactive metabolite in his or her urine without proof the defendant had knowledge of the presence of the metabolite and proof of actual impairment.

To establish his claim of ineffective assistance of counsel, the defendant must show that his "trial counsel failed to perform an essential duty and that this failure resulted in prejudice." *State v. Kress*, 636 N.W.2d 12, 20 (Iowa 2001). The defendant must prove both elements by a preponderance of the evidence, and if either element is absent, we affirm. *Id.* To establish trial counsel failed to perform an essential duty, Davis must establish "the attorney performed below the standard demanded of a reasonably competent attorney." *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). The attorney's performance is measured against "prevailing professional norms," and it is presumed the attorney performed competently. *See id.* The ultimate inquiry regarding prejudice is whether counsel's allegedly deficient performance caused a complete "breakdown in the adversary process" such that the conviction is unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires a showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Collins v. State*, 588 N.W.2d 399, 402 (Iowa 1998) (citation and internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine

confidence in the outcome of the defendant's trial." *Id.* (citation and internal quotation marks omitted).

Davis primarily relies on *State v. Harris*, 322 P.3d 160 (Ariz. 2014). In that case, the Arizona Supreme Court resolved a question of interpretation regarding its statute prohibiting driving "while under the influence of . . . any drug." *Harris*, 322 P.3d at 160. The court was presented with the question of whether the term "drug . . . or its metabolite" included "Carboxy-Tetrahydrocannabinol ('Carboxy-THC')." *See id.* The court reasoned the term "its metabolite" was ambiguous because it could be singular or plural. *Id.* at 162. If singular, the term encompassed only Hydroxy-THC, the primary metabolite of cannabis, which is also the active metabolite of cannabis capable of causing impairment. *See id.* at 161. If plural, the term "its metabolite" encompassed Carboxy-THC, a secondary metabolite, which is inactive and incapable of causing impairment. *See id.* The court reasoned the latter interpretation would lead to absurd results. *See id.* at 162 ("The State's interpretation that 'its metabolite' includes *any* byproduct of a drug listed in § 13–3401 found in a driver's system leads to absurd results. . . . Most notably, this interpretation would create criminal liability regardless of how long the metabolite remains in the driver's system or whether it has any impairing effect."). The court also reasoned that allowing conviction based on the mere presence of a metabolite of a controlled substance in the motorist's blood or urine without proof of impairment was contrary to the Arizona legislature's intent to prevent impaired driving. *See id.* at 164. The court held "[d]rivers cannot be convicted of the . . . offense based merely on the presence of a non-impairing metabolite that may reflect the prior usage of marijuana." *Id.*

The defendant's reliance on *Harris* is misplaced. The question presented in this appeal is not whether Carboxy-THC, the metabolite found in the defendant's urine, is a "controlled substance." *See* Iowa Code § 321J.1(4) (defining "controlled substance" to include "any drug, substance, or compound that is listed in section 124.204 or 124.206, or any metabolite or derivative" of the same). Instead, the question presented in this appeal is whether Davis's trial counsel was ineffective, in the constitutional sense. With respect to the limited question before this court, we conclude the defendant has failed to prove his claim.

The challenges to the statute raised in this appeal were effectively foreclosed to Davis's trial counsel. The supreme court has held section 321J.2 allows conviction solely upon proof the defendant had "any amount" of a controlled substance in his body without regard to whether the defendant was actually impaired. *See State v. Comried*, 693 N.W.2d 773, 775 (Iowa 2005) ("Under these subsections, the State need not prove the defendant was under the influence-only that he was driving a motor vehicle with a specific amount of alcohol or drugs in his body. . . . As to controlled substances, 'any amount' violates the statute."). The supreme court further concluded "the legislature likely included the 'any amount' language in the amendment to create a per se ban." *Id.* at 776. "We are not at liberty to overrule controlling supreme court precedent." *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).

This court has concluded the statutory regime survived constitutional challenge. In *State v. Hodges*, No. 10-0031, 2011 WL 944378, at *5 (Iowa Ct. App. Mar. 21, 2011), we held "Hodge's substantive due process rights were not

violated by Iowa Code section 321J.2(1)(c), and thus, his trial counsel did not render ineffective assistance by failing to challenge the constitutionality of this section." In that case, the defendant argued his substantive due process rights were violated

> because traces of controlled substances can remain in the body long after the impairment caused by the substance wears off, prohibiting a person from driving with "any amount" of controlled substance in his body has no reasonable fit with the statute's purpose to protect the public on the roadways from impaired drivers.

*Id.* at *4-5. This is the same argument presented in this case. Similarly, in *Loder v. Iowa Department of Transportation*, 622 N.W.2d 513, 516 (Iowa Ct. App. 2000), we concluded:

> The lack of any numerical correlation or direct relationship between the amount of marijuana metabolites in a person's system and the impairment of that person's ability to drive does not foreclose the finding that the statute is rationally related to protecting the public. The statute is aimed at keeping drivers who are impaired because of the use of illegal drugs off the highways. Unlike the blood alcohol concentration test used to measure alcohol impairment there is no similar test to measure marijuana impairment. There is, though, as was used here, a test to measure the use of marijuana, a drug illegal in the State of Iowa, in a person's body. There being no reliable indicator of impairment, the legislature could rationally decide that the public is best protected by prohibiting one from driving who has a measurable amount of marijuana metabolites.

The Ohio Court of Appeals rejected a similar challenge. We find the analysis persuasive:

> Although, Mr. Whalen couches his arguments in terms of vagueness and overbreadth, his real quibble seems to be with the legislative decision to criminalize driving based upon the presence of a marihuana metabolite that may not itself cause impairment. Certainly, however, the presence of a marihuana metabolite in one's system indicates that one has used marihuana, an illegal drug in Ohio. Furthermore, THC, the active ingredient in marihuana, leaves the body relatively quickly. Unlike the case with alcohol

> breathalyzer tests, which are commonly administered by police during roadside stops, it may take some time before police are able to transport and administer a blood or urine test to a suspected drugged driver. Accordingly, the legislative decision to include marihuana metabolites within the per se prohibition is not unreasonable.

*State v. Whalen*, 991 N.E.2d 738, 743-44 (Ohio Ct. App. 2013).

"In considering whether counsel's failure to raise an issue amounts to ineffective assistance, we have stated that counsel is not required to be a 'crystal gazer' to predict changes in law." *State v. Effler*, 769 N.W.2d 880, 897 (Iowa 2009) (citing *State v. Schoelerman*, 315 N.W.2d 67, 72 (Iowa 1982)); *see also State v. Liddell*, 672 N.W.2d 805, 814 (Iowa 2003) ("Counsel need not be a crystal gazer; it is not necessary to know what the law will become in the future to provide effective assistance of counsel."). Nor does counsel have a duty to raise and relitigate issues already decided. *See Effler*, 769 N.W.2d at 897. Thus, we conclude Davis failed to establish his trial counsel breached an essential duty owed Davis in failing to raise the claims presented in this appeal. *See, e.g., State v. Smith*, No. 07-0915, 2008 WL 4325945, at *2 (Iowa Ct. App. Sept. 17, 2008) (holding counsel was not ineffective in failing to challenge instruction where the law was well settled).

We next address Davis's challenge to the district court's denial of his motion for mistrial. Davis contends the district court erred in refusing to grant a mistrial after Deputy Quinn testified Davis told her he had used crack. Our court reviews the denial of a motion for mistrial for an abuse of discretion. *State v. Jackson*, 587 N.W.2d 764, 766 (Iowa 1998); *State v. Keys*, 535 N.W.2d 783, 786

(Iowa Ct. App. 1995). The district court has broad discretion when ruling on a motion for a mistrial. *Keys*, 535 N.W.2d at 785.

At trial, defense counsel objected to the introduction of evidence regarding Davis's past drug use and moved for a mistrial. The district court stated "[t]he reference to prior drug use is improper, but I don't feel that rises to the level of prejudice that would warrant a mistrial at this point and so the question is how do we deal with it." The district court admonished the jurors to disregard the testimony:

> You have—if you've been listening to the deputy's testimony, there was some reference to a drug called crack and it has been determined that if there was any reference to the defendant's use of that drug, it was not admitted that he used it recently. It is—you're admonished that you should disregard any reference to the use of crack because there is no evidence and there will be no evidence to suggest that he was using it at any time near the time of this incident and, therefore, he could not have been impaired by that drug, so you are to ignore the reference to that drug.

A "reversal may only be predicated on the proposition that the matter forbidden by the ruling was so prejudicial that its effect upon the jury could not be erased by the trial court's admonition." *Jackson*, 587 N.W.2d at 766. The court will consider evidence unfairly prejudicial when it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action that may cause the jury to base its decision on something other than the established propositions in the case." *State v. White*, 668 N.W.2d 850, 854 (Iowa 2003). "Only in extreme instances where it is manifest that the prejudicial effect of the evidence on the jury remained, despite its exclusion, and influenced the jury is the defendant denied a fair trial and entitled to a [mistrial]." *Jackson*, 587 N.W.2d at 766.

This is not one of the rare cases in which the district court abused its discretion in denying the motion for mistrial.  Here, the deputy's testimony was isolated, defense counsel quickly objected, and the district court struck the testimony and gave a strong admonition to the jury.  "Generally, an admonition to the jury to disregard inadmissible testimony is sufficient to cure any prejudice." *State v. Brotherton*, 384 N.W.2d 375, 381 (Iowa 1986).  "Prompt withdrawal of testimony that is improper with such an admonition to the jury as was given here leaves no ground for complaint except in extreme instances where it is manifest its prejudicial effect remained and influenced the verdict despite its exclusion." *State v. Johnson*, 183 N.W.2d 194, 198 (Iowa 1971).  "[W]hen improper evidence has been promptly stricken and the jury admonished to disregard it, there has been no erroneous ruling by the district court."  *Jackson*, 587 N.W.2d at 766.

Finally, the defendant claims his defense counsel was ineffective in failing to file a motion in limine to exclude evidence of his past crack use.  The evidence was excluded on trial counsel's objection.  The claim is without merit.

**AFFIRMED.**