**IN THE COURT OF APPEALS OF IOWA**

No. 18-0082
Filed April 3, 2019

**JACOLBY JAPRIEST PENDLETON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi
Wittig, Judge.

Jacolby Pendleton appeals the district court's denial of his application for
postconviction relief. **AFFIRMED.**

Thomas M. McIntee, Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney
General, for appellee State.

Considered by Vogel, C.J., and Vaitheswaran and Mullins, JJ.

**VAITHESWARAN, Judge.**

A jury found Jacolby Pendleton guilty of second-degree robbery. The district court sentenced him to a prison term not exceeding ten years, subject to a seventy-percent mandatory minimum term. The court of appeals affirmed his judgment and sentence. *State v. Pendleton*, No. 13-1647, 2014 WL 6977188, at *1 (Iowa Ct. App. Dec. 10, 2014).

Pendleton filed a postconviction-relief application, which was denied following an evidentiary hearing. On appeal, Pendleton (1) challenges the specificity of the postconviction court's findings of fact, (2) contends his mandatory minimum sentence constituted cruel and unusual punishment, and (3) argues his attorneys were ineffective in several respects.

## I.    *Findings of Fact*

Pendleton argues the postconviction court failed to make specific findings of fact relating to (1) an alternate juror's observation of him in shackles and the juror's transmission of the information to other jurors; (2) his claim that trial counsel did not adequately advise him of the terms of a plea offer; and (3) his claim that trial counsel failed to object to hearsay statements made by a police officer.

Pendleton is correct that a postconviction court has an obligation to address "all the *issues* raised." *Gamble v. State*, 723 N.W.2d 443, 446 (Iowa 2006). The postconviction court did so. On the first issue, the court found:

> Trial counsel moved for all appropriate motions including a motion for mistrial as a result of a juror seeing the applicant in shackles when the trial broke for lunch. The juror was brought before the court and the decision was made to release that individual as the alternate. Once trial counsel found out that the juror has said something to his fellow jurors about what he saw, the person was

again brought before the court to testify to what happened in support of a motion for new trial.

The postconviction court concluded "curative action was taken" by the district court.

On the second issue—the advice Pendleton received about the terms of a plea offer—the postconviction court summarized Pendleton's testimony concerning his discussions with his trial attorney, then determined Pendleton "may have had some deficits when it came to knowledge of the law, but understanding the difference between having to serve 7 years before one can be eligible for parole versus serving a 'straight' 10 with good time credit is not a difficult concept to grasp." The court further stated, "Trial counsel explained this to him with as much clarity as possible. He insisted on going to trial to clear his name. Furthermore, he did not offer credible evidence that his decision was not knowing and voluntary."

The final issue—counsel's claimed failure to object to the officer's hearsay testimony about a non-testifying alibi witness—was not raised by Pendleton at the postconviction-relief hearing. Accordingly, the postconviction court had no reason to rule on it.

We conclude the postconviction court made fact findings on the issues raised.

## II. Cruel and Unusual Punishment – Mandatory Minimum Sentence

Pendleton argues his mandatory minimum sentence

constitutes cruel and unusual punishment in violation of the State and Federal Constitutions when applied to him as a youth of 19 years of age, with no prior adult criminal record, just as the Iowa Supreme Court in *Lyle* abrogated mandatory minimum sentences for all individuals younger than 18 prosecuted as adults because the mandatory sentence failed to permit the court to consider any

circumstances based on his attributes of youth or the circumstances of his conduct in mitigation of punishment.

(citing *State v. Lyle*, 854 N.W.2d 378, 400 (Iowa 2014).

In *Lyle*, the court held "a mandatory minimum sentencing schema, like the one contained in Iowa Code section 902.12 (2013), violates article I, section 17 of the Iowa Constitution when applied in cases involving conduct committed by youthful offenders." 854 N.W.2d at 402. But, the court emphasized

our holding today has no application to sentencing laws affecting adult offenders. Lines are drawn in our law by necessity and are incorporated into the jurisprudence we have developed to usher the Iowa Constitution through time. This case does not move any of the lines that currently exist in the sentencing of adult offenders.

*Id.* at 403.

Pendleton was an adult offender. Accordingly, *Lyle*'s holding does not assist him.

### III. *Ineffective Assistance of Counsel*

Pendleton challenges the performance of his attorneys. To prove an ineffective-assistance-of-counsel claim, a defendant must show (1) deficient performance and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Pendleton contends his trial attorney was ineffective in failing to (1) "object to admission of testimony regarding [a potential alibi witness]'s alleged hearsay statements"; (2) "object to statements of [the] prosecutor and police officer regarding identity of subjects on [a] video, which invaded the fact-finding province of the jury"; and (3) "challenge [the] mandatory minimum 70% [sentence] as being unconstitutional under the 8th Am[endment to the United States] Constitution and

Art. I, Section 17 of the Iowa Constitution." We preserve the first two claims for a possible second postconviction-relief action. *See State v. Harris*, 919 N.W.2d 753, 754 (Iowa 2018) ("If the development of the ineffective-assistance claim in the appellate brief was insufficient to allow its consideration, the court of appeals should not consider the claim, but it should not outright reject it."). The third claim was addressed above. Pendleton's trial attorney did not have the benefit of *Lyle*, which post-dated his representation. We conclude he had no obligation to foresee the holding and argue the same reasoning should apply to adult offenders. *See State v. Schoelerman*, 315 N.W.2d 67, 72 (Iowa 1982) ("We recognize that an attorney need not be a 'crystal gazer' who can predict future changes in established rules of law in order to provide effective assistance to a criminal defendant."). We conclude Pendleton's attorney was not ineffective in failing to raise a *Lyle*-style challenge to the sentence.

Pendleton also argues his appellate attorney on direct appeal failed to raise the following issues: (1) cruel and unusual punishment in imposition of the mandatory minimum sentence; (2) failure to grant a mistrial for the dismissed juror; and (3) failure to object "to hearsay testimony of [a potential alibi witness] by" the police officer. We addressed the sentencing issue above. Suffice it to say appellate counsel was not ineffective in failing to raise a *Lyle* issue. As for the remaining two claims, the record is inadequate to address them, and we preserve them for a possible second postconviction-relief action. *Harris*, 919 N.W.2d at 754.

Lastly, Pendleton contends his postconviction trial attorney was ineffective in failing to (1) challenge his mandatory minimum sentence and (2) interview, depose, and call several witnesses. Again, we find the sentencing issue

unpersuasive for the reasons discussed above. We preserve the remaining claim for a possible second postconviction-relief action.

We affirm the denial of Pendleton's postconviction-relief application.

**AFFIRMED.**