# IN THE COURT OF APPEALS OF IOWA

No. 19-0267
Filed May 13, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JASMAINE R. WARREN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.


        Jasmaine Warren appeals her criminal convictions following a bench trial.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


        Gina Messamer of Parrish Kruidenier Dunn Boles Gribble Gentry Brown &

Bergmann L.L.P., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney

General, for appellee.


        Considered by Bower, C.J., and Vaitheswaran, Doyle, Tabor, Mullins,

Greer, Schumacher, and Ahlers, JJ.

**MULLINS, Judge.**

Jasmaine Warren appeals following her convictions of second-offense operating while intoxicated (OWI) and driving with a revoked license. On appeal, Warren challenges the sufficiency of the evidence supporting the OWI conviction and argues her counsel rendered ineffective assistance in failing to seek suppression of evidence on the basis that she was subjected to an unconstitutional seizure.

## I.     Background Facts and Proceedings

At approximately 2:30 a.m. on May 4, 2018, Officer Jeremy Engle of the Des Moines Police Department was on routine patrol when he observed a vehicle, later determined to be driven by Warren, "to be accelerating at a high rate of speed." Engle turned around and followed the vehicle. Thereafter, Warren illegally parked her vehicle, halfway in the roadway and halfway in a driveway of a residence. Another officer in a separate police cruiser activated his overhead lights and pulled in behind Warren. Engle pulled in behind that officer and made contact with Warren, advising she could not park her vehicle where she did.[1] Engle testified:

> [Warren] seemed like she wanted to get out of the vehicle and get inside quickly. I made contact with her and I advised her that she could not park her vehicle that way. And I asked her if she had her license, registration, and proof of insurance. She walked to her car and grabbed her Iowa ID.
>     At that time I smelled a strong odor of marijuana emitting from her vehicle. I did observe that her license said "identification only." I asked her what the status was and she advised me it was suspended.

---

[1] Most of Engle's encounter with Warren was captured by his body camera. Video footage from the camera was admitted as evidence at trial.

She never provided a registration or insurance information. Upon questioning from Engle as to why the vehicle smelled of marijuana, Warren reported she had smoked earlier at work. She later admitted to consuming alcohol on the date in question as well. Engle confirmed Warren's license was revoked. Warren was arrested and cited for second-offense OWI, driving with a revoked license, illegal parking, and failure to provide proof of liability insurance. Warren was formally charged by trial information with second-offense OWI and driving while revoked.[2] Following a bench trial, she was found guilty as charged. Warren appealed following the imposition of sentence.

**II.    Analysis**

On appeal, Warren challenges the sufficiency of the evidence supporting the OWI conviction and argues her counsel rendered ineffective assistance in failing to seek suppression of evidence on the basis that she was subjected to an unconstitutional seizure.

A.    Sufficiency of the Evidence

As to the sufficiency-of-the-evidence claim, the State proceeded on two theories—that Warren operated a motor vehicle while either "under the influence of an alcoholic beverage or other drug or a combination of such substances" or "any amount of a controlled substance [was] present in [her] person, as measured in the person's blood or urine." Iowa Code § 321J.2(1)(a), (c) (2018). The court found Warren guilty of OWI but did not specify which theory its verdict rested upon, thus amounting to a general verdict. Warren argues the evidence was insufficient

---

[2] The record indicates she was separately charged with the other crimes in simple-misdemeanor cases.

to support the latter theory and her conviction must therefore be reversed. *See, e.g.*, *State v. Myers*, 924 N.W.2d 823, 827 (Iowa 2019) ("[I]f the pronouncement by the district court is considered a general verdict based on a crime with multiple bases for guilt, substantial evidence must support each alternative under the statute.").

The State agrees the evidence was insufficient under the latter theory and the court rendered a general verdict.[3] "Nevertheless, the State submits that reversal of Warren's conviction on such grounds is forbidden by the newly enacted Iowa Code section 814.28," which took effect July 1, 2019. *See* 2019 Iowa Acts ch. 140, § 32. That provision provides:

> When the prosecution relies on multiple or alternative theories to prove the commission of a public offense, a jury may return a general verdict. If the jury returns a general verdict, an appellate court shall not set aside or reverse such a verdict on the basis of a defective or insufficient theory if one or more of the theories presented and described in the complaint, information, indictment, or jury instruction is sufficient to sustain the verdict on at least one count.

Iowa Code § 814.28 (2019).

Judgment of conviction was entered and the sentence was imposed prior to the statute's effective date. The State submits the statute is remedial in nature and is therefore entitled to retroactive application. First, the State argues the language of the statute denotes a legislative intent for retroactive application, highlighting the "appellate court" language in the statute. However, our supreme

---

[3] The district court's analysis and verdict first recited the three alternatives under which the State had charged Warren. The State's evidence at trial attempted to support two of the alternatives, but the court did not analyze each one separately or render a verdict on each. As noted above, the State concedes it was a general verdict.

court has rejected a similar notion that recently enacted statutes, Iowa Code sections 814.6 and 814.7, which foreclose a right of appeal when a defendant pleads guilty except in certain circumstances and forbid appellate courts from considering ineffective-assistance-of-counsel claims on direct appeal, denote a legislative intent for retroactive treatment. *See State v. Macke*, 933 N.W.2d 226, 235 (Iowa 2019) ("We conclude the absence of retroactivity language in sections 814.6 and 814.7 means those provisions apply only prospectively and do not apply to cases pending on July 1, 2019.").[4] This court has similarly rejected the notion that recently enacted legislation, Iowa Code sections 814.6A(1) and 822.3A(1), which prevent any Iowa court, including appellate courts, from considering pro se documents when a defendant is currently represented by counsel and prohibit the filing and consideration of pro se documents in proceedings under chapter 822, indicate a legislative intent for retroactive application. *See, e.g.*, *State v. Banks*, No. 18-1337, 2020 WL 110297, at *2 n.2 (Iowa Ct. App. Jan. 9, 2020); *Campbell v. State*, No. 18-1052, 2020 WL 105086, at *1 n.1 (Iowa Ct. App. Jan. 9, 2020); *State v. Banks*, No. 18-0721, 2020 WL 105078, at *1 n.1 (Iowa Ct. App. Jan. 9, 2020); *State v. O'Connor*, No. 18-0376, 2020 WL 109509, at *3 n.1 (Iowa Ct. App. Jan. 9, 2020); *State v. Syperda*, No. 18-1471, 2019 WL 6893791, at *12 (Iowa Ct. App. Dec. 18, 2019); *Daniels v. State*, No. 18-0672, 2019 WL 6894225, at *1 n.2. (Iowa Ct. App. Dec. 18, 2019); *State v. Kehoe*, No. 18-0222, 2019 WL 6893771,

---

[4] The State argues we are unable to consider Warren's claim of ineffective assistance of counsel, discussed below. *Macke* states otherwise. *See* 933 N.W.2d at 232.

at *1 n.1 (Iowa Ct. App. Dec. 18, 2019); *State v. Purk*, No. 18-0208, 2019 WL 5790875, at *7 n.8 (Iowa Ct. App. Nov. 6, 2019).

Next, the State argues the statute provides a new remedy for the evil of having convictions vacated when one alternative for conviction is invalid while there is another alternative supported by sufficient evidence. However, the statute also eliminates a remedy to defendants and is thus substantive and therefore not entitled to retroactive treatment. *See Macke*, 933 N.W.2d at 232 ("[W]e have refused to apply a statute retrospectively when the statute eliminates or limits a remedy." (quoting *Iowa Beta Chapter of Phi Delta Theta Fraternity v. State*, 763 N.W.2d 250, 267 (Iowa 1985))). Even if the statute was remedial or procedural in nature, the general rule, as recently reaffirmed by our supreme court, is that "unless the legislature clearly indicates otherwise, 'statutes controlling appeals are those that were in effect at the time the judgment or order appealed from was rendered.'" *Id.* at 228 (quoting *James v. State*, 479 N.W.2d 287, 290 (Iowa 1991)). Section 814.28 lacks language clearly indicating a legislative intent for retroactivity. The statute did not exist at the time judgment of conviction was entered against Warren.

Applying the controlling statutes and court precedent in effect at the time of judgment, the court's general verdict and the unsupported theory for guilt require reversal of Warren's OWI conviction and a remand for a new trial on that count. *See, e.g.*, *State v. Tyler*, 873 N.W.2d 741, 754 (Iowa 2016).

B.      Ineffective Assistance of Counsel

We turn to Warren's claim her counsel was ineffective in failing to move for suppression of evidence on the ground that she was illegally seized in violation of

her constitutional rights. Specifically, she argues counsel should have moved for suppression on the basis that she was seized absent reasonable suspicion and the seizure was impermissibly prolonged absent ongoing reasonable suspicion.

### 1. To Answer or Not

Given our remand for a new trial on count one, the dissent asserts we should not address the ineffective-assistance-of-counsel issue, and we should not address the suppression issue on this direct appeal. For the reasons stated below, we believe it is appropriate and preferred that we address the ineffective-assistance issue Warren raised.

We begin our analysis with reviewing a statute in effect at the time of entry of judgment that directed appellate courts: "If an ineffective assistance of counsel claim is raised on direct appeal from the criminal proceedings, the court may decide the record is adequate to decide the claim or may choose to preserve the claim for determination under chapter 822." Iowa Code § 814.7(3) (2018).[5] Our supreme court has emphasized:

> [S]ection 814.7(3) clearly gives the appellate court only two choices when an ineffective-assistance claim is raised on direct appeal: (1) "decide the record is adequate to decide the claim," or (2) "choose

---

[5] As touched on above, effective July 1, 2019, section 814.7 was amended to provide:

> An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822. The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes, and the claim shall not be decided on direct appeal from the criminal proceedings.

2019 Iowa Acts ch. 140, § 31. The amendment does "not apply to a direct appeal from a judgment and sentence entered before July 1, 2019." *Macke*, 933 N.W.2d at 228.

> to preserve the claim for determination under chapter 822." Iowa Code § 814.7(3). . . .
>
> . . . . If the defendant requests that the court decide the claim on direct appeal, it is for the court to determine whether the record is adequate and, if so, to resolve the claim. If, however, the court determines the claim cannot be addressed on appeal, the court must preserve it for a postconviction-relief proceeding, regardless of the court's view of the potential viability of the claim.

*State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010). Our court has followed that procedure. *See, e.g., State v. Hollie*, 854 N.W.2d 695, 698–99 (Iowa Ct. App. 2013) (concluding on direct appeal counsel was ineffective in failing to timely file a motion to suppress a vehicle stop involving an alleged registration violation per 321.37 (a scheduled violation) when defendant had a temporary registration card displayed and the officer's sole reason for stopping her was "a sweeping suspicion or hunch of criminal activity on the part of people in general").

There are occasions in which our appellate courts choose to not address an issue that has been properly presented—if a ruling is not necessary for disposition of the appeal or if the issue could be adequately or more appropriately addressed by a lower court on remand. This has happened in the context of ineffective-assistance-of-counsel claims on direct appeal. In the case of *State v. Pals*, the defendant was convicted of a single charge of possession of a controlled substance and appealed to challenge the propriety of the district court ruling denying his motion to suppress. 805 N.W.2d 767, 769 (Iowa 2011). He also lodged a claim his counsel was ineffective for failing to file a motion to dismiss on speedy-trial grounds. *Id.* at 771 n.1. On appeal, the supreme court reversed the denial of the defendant's motion to suppress and remanded for further proceedings on the ground that his consent to search was involuntary under the Iowa

Constitution. *Id.* at 783–84. The court deemed it unnecessary to consider the claim counsel was ineffective for failing to pursue dismissal on speedy-trial grounds. *Id.* at 771 & n.1 (citing *State v. Bogan*, 774 N.W.2d 676, 684 (Iowa 2009) (deciding to not address an ineffective-assistance-of-counsel claim for faulty jury instructions when reversing on other grounds and remanding for a new trial, noting the district court would have an opportunity on remand to instruct properly)). Although the court in *Pals* did not explain its reason for declining to decide the ineffective-assistance issue, it is likely because there is no deadline to file a motion to dismiss on speedy-trial grounds and the argument could be raised on remand. *See* Iowa R. Crim. P. 2.33(2); B. John Burns, Iowa Practice Series, Criminal Procedure § 10.2(d) (Mar. 2020 update). Furthermore, the remand would provide an opportunity for the State to develop a record concerning possible acquiescence or waiver of speedy trial, if necessary for the court to address a motion to dismiss. *See State v. Taylor*, 881 N.W.2d 72, 77–78 (Iowa 2016).

Unlike a motion to dismiss—the issue the *Pals* court chose to leave for the district court to address—which has no filing deadline, a motion to suppress—the issue we are considering—must be filed no later than forty days after arraignment, absent a showing of good cause. *See* Iowa R. Crim. P. 2.11(2)(c), (4). We have found no case in which a district court in a non-postconviction-relief case found good cause based on ineffective assistance of counsel to allow a defendant to file a motion to suppress after the motions deadline.[6] We acknowledge the dissent

---

[6] We have, however, found a case in which the State appealed the district court's grant of an extension of time to file a motion to suppress and the supreme court affirmed, reasoning:

submits *State v. Jones*, No. 05-0316, 2006 WL 133009, at *2 (Iowa Ct. App. Jan. 19, 2006), as support for its proposition that timeliness and good cause may be addressed by the district court on remand, but we view the posture of that case differently. In *Jones*, the defendant filed a motion to suppress after the motions deadline. 2006 WL 133009, at *1. She argued to the district court that counsel was ineffective in failing to timely file. *Id.* The district court "rejected the claim that ineffective assistance of prior counsel could constitute good cause" for the delay. *Id.* Jones appealed, arguing ineffective assistance of counsel constituted good cause for the late filing. *Id.* Our court recognized counsel may be found ineffective for failing to timely file a motion to suppress. *Id.* at *2 (citing *State v. Hrbek*, 336 N.W.2d 431, 436 (Iowa 1983) (concluding the record was adequate on appeal and counsel was ineffective in failing to challenge voluntariness of inculpatory statements but remanding to district court to have an evidentiary hearing to decide whether such statements were voluntary)); *see also State v. Rhiner*, 352 N.W.2d

---

The district court considered the *untimely motion due to the multiple changes of counsel and prior counsel's failure to represent Ortiz properly*. The district court knew that if Ortiz's motion to suppress should have been granted and the court failed to consider it pretrial, any guilty verdict in Ortiz's case may have been subject to reversal on an ineffective-assistance-of-counsel claim. It is the public policy of this state that litigation should be final at the earliest possible date. To avoid additional litigation in this matter the court did the proper thing by considering the motion rather than waiting for its merits to be determined in a postconviction relief proceeding. Accordingly, the district court did not abuse its discretion in hearing the motion under the circumstances of this case.

*State v. Ortiz*, 766 N.W.2d 244, 250 (Iowa 2009) (emphasis added).

The record in this case shows the criminal complaints were filed May 4, 2018, a public defender was appointed on May 14 and was replaced on May 18 by trial counsel, who represented Warren through trial on October 15 and until the filing of the notice of appeal.

258, 261 (Iowa 1984) (following *Hrbek* but deciding record was adequate on direct appeal to consider the claim counsel was ineffective in failing to timely file a motion to suppress).[7] In *Jones*, our court concluded on appeal that trial counsel was not ineffective because a motion to suppress, if it had been filed, would have had no merit. 2006 WL 133009, at *3. The *Jones* court concluded the district court had not abused its discretion in determining good cause did not excuse an untimely motion to suppress, but it did not address whether a district court could have relied on ineffective assistance of counsel to decide the good cause[8] requirement for avoiding waiver resulting from a late motion filing. *See id.* at *2.

The dissent cites *State v. Divis*, where a panel of this court reversed a defendant's conviction of second-degree robbery and remanded for a new trial, concluding his counsel was ineffective in not arguing for exclusion of prejudicial evidence. No. 15-1123, 2016 WL 4803749, at *1 (Iowa Ct. App. Sept. 14, 2016). The panel declined to consider the defendant's alternative claim that his counsel was ineffective in failing to file a motion to suppress alleging an illegal search and seizure. *Id.* at *1, *8. The panel took "no position on Divis's ability to litigate the suppression issue on remand." *Id.* at *8 n.3. In *State v. Johnson*, cited in *Divis*, a defendant charged with first-degree robbery filed a motion to suppress, challenging

---

[7] At the time we decided *Jones*, like in our present case, an appellate court had the authority to determine the record was adequate to decide an ineffective-assistance claim or preserve it for postconviction relief. *See* Iowa Code § 814.7(3) (2005).

[8] "Failure of the defendant to timely raise defenses or objections or to make requests which must be made prior to trial under this rule shall constitute waiver thereof, but the court, for good cause shown, may grant relief from such waiver." Iowa R. Crim. P. 2.11(3); *see also* Iowa R. Crim. P. 2.11(4) (providing filing deadlines).

the validity of a search warrant, which was denied by the district court for lack of standing. 756 N.W.2d 682, 685 (Iowa 2008). Johnson appealed, and this court reversed and remanded for a new trial based on Johnson's challenge to a jury instruction; we did not reach Johnson's challenge to the denial of his motion to suppress. *Id.*; *see State v. Johnson*, No. 05-0558, 2006 WL 1279119, at *1, *3 (Iowa Ct. App. May 10, 2006). Following his conviction after retrial, the defendant appealed, challenging the court's denial of his motion to suppress and the constitutionality of the court's limitations on standby counsel. *Johnson*, 756 N.W.2d at 686.[9] *Divis* and *Johnson* are examples of cases in which this court has reversed and remanded convictions without deciding suppression issues.

Thus, case law demonstrates that an appellate court can choose to not address an ineffective-assistance claim on direct appeal when there is a reversal and remand. But should we in this case? We assume this de facto judicial exception to the legislative scheme of Iowa Code section 814.7(3) has parameters. We have asserted above that exception has occurred in cases in which ruling on the issue is not necessary for disposition of the appeal or if the issue could be adequately or more appropriately addressed by a lower court on remand.

In considering whether we should decide the issue on direct appeal, our first statutory directive is to consider whether the record is adequate on appeal to decide the issue. *See* Iowa Code § 814.7(3). The dissent asserts the record is

---

[9] On appeal from his retrial, the supreme court decided res judicata did not prevent Johnson from again challenging the denial of his motion to suppress but found the district court's failure to rule on the motion to suppress was harmless and the search warrant was valid. *Johnson*, 756 N.W.2d at 686–87.

Johnson did not raise an ineffective-assistance-of-counsel claim in either of his appeals.

not adequate because there are unanswered factual questions. The question, though, is not whether more facts could have been developed or a more thorough record could have been made. The legislature directed us to determine whether the record is adequate. On our careful review of the record, we have concluded it is, and we will address the record more completely in the analysis of the suppression issue later in this opinion.[10]

Notwithstanding the adequacy of the record, which is dispositive of our authority to decide the issue, and in consideration of the case law discussion above, we have considered whether the issue could be more adequately or more appropriately addressed on remand. There are two factors that weigh against leaving the issue for remand. One is the unanswered question as to what a district court is to do with an ineffective-assistance-of-counsel claim for failure to timely file a motion to suppress[11] on remand. The district court has no authority in a non-postconviction-relief case to apply the *Strickland* analysis necessary for an ineffective-assistance claim. *See* Iowa Code § 814.7(1) ("An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822, except as otherwise provided in this section."), (3) (allowing *appellate courts* to consider ineffective-assistance claims

---

[10] The cases that we have reviewed in which an appellate court has chosen to not decide an ineffective-assistance-of-counsel claim, and left it unresolved on a reverse and remand, do not indicate whether the record was adequate to decide the claim. If the record was not in fact adequate, and the case was reversed and remanded on other grounds, there would be no need to preserve for possible postconviction relief as there would not yet have been a final judgment.

[11] The forty-day deadline for filing a motion to suppress expired prior to the first trial. *See* Iowa R. Crim. P. 2.11(2)–(4). Failure to have filed the motion to suppress constituted a waiver of the right to file such a motion. Iowa R. Crim. P. 2.11(3).

in a direct appeal from criminal proceedings if the record is adequate). We have no case law that guides our determination—or a determination by the district court—of whether it would be an abuse of discretion for the district court to find good cause to waive the time deadline for filing a motion to suppress[12] under the circumstances of this case. We acknowledge under certain facts the district court might reasonably determine acts or omissions of counsel constitute good cause for failure to timely file a motion to suppress, but our cases show general inadvertence by counsel or client when either has the factual information necessary to form the basis for a motion to suppress does not amount to good cause. *See, e.g.*, *State v. Ball*, 600 N.W.2d 602, 605 (Iowa 1999) (finding good cause lacking where counsel or client were at least apprised of the factual information that would form the basis for a pretrial motion to suppress); *State v. Cole*, 295 N.W.2d 29, 39 (Iowa 1980) (same); *State v. Courts*, No. 19-0074, 2020 WL 1548496, at *3 (Iowa Ct. App. Apr. 1, 2020) ("Neither Courts's initial failure to take an interest in her own defense nor defense counsel's failure to investigate the case constitute "good cause" for missing the filing deadline."); *Hollie*, 854 N.W.2d at 697 (agreeing with district court that "counsel's tardiness in realizing the viability of the suppression issue alleged in its motion" did not amount to good cause); *Jones*, 2006 WL 133009, at *2 (finding no good cause when sole alleged reason

---

[12] Failure to timely file a motion to suppress "shall constitute waiver thereof, but the court, for good cause shown, may grant relief from such waiver." Iowa R. Crim. P. 2.11(3). Whether good cause exists is a discretionary decision, and "[f]actors considered in the application of this standard include the adequacy of the defendant's reasons for failure to comply with applicable rules of procedure and whether the State was prejudiced as a result." *State v. Eldridge*, 590 N.W.2d 734, 736 (Iowa 1999).

for delay was ineffective assistance of counsel); *cf. Peoples Nat. Gas Co. v. City of Hartley*, 497 N.W.2d 874, 875–76 (Iowa 1993) (holding "counsel's inadvertence and oversight do not constitute 'good cause'").

Furthermore, the district court's analysis of good cause might be influenced by an evaluation of the ultimate merits of the issue presented. But that would require the district court to engage in a *Strickland* prejudice analysis. As our analysis of the suppression issue below illustrates, the seizure question in this case is one of first impression, having not previously been determined by an appellate court in Iowa. Thus, a remand would leave the district court with little or no direction on the issues likely to be presented. Also, if Warren were unsuccessful on either the timeliness issue or the ultimate suppression issue, a further appeal and/or a postconviction-relief action would likely follow; thus requiring more judicial resources both in the district and appellate courts. *See Ortiz*, 766 N.W.2d at 250 ("It is the public policy of this state that litigation should be final at the earliest possible date.").

Another wrinkle present here distinguishes this case from those discussed above and militates against deferring the issue to the district court instead of us answering the call of section 814.7(3). Warren was convicted of *two* crimes: OWI and driving while barred.[13] Evidence supporting both of those crimes was obtained after the allegedly unconstitutional seizure occurred. We have reversed Warren's conviction on count one, but she remains convicted on count two. If we were to

---

[13] In *State v. Pals*, summarized more thoroughly above, the defendant was convicted of *one offense*, and the supreme court reversed and remanded the case, choosing to not address a claim of ineffective assistance of counsel for failing to challenge an alleged speedy-trial violation. 805 N.W.2d at 771 n.1.

find counsel was ineffective as alleged, then Warren would likewise be entitled to a new trial on count two. If we were to find counsel was not ineffective, the conviction on count two is final and only count one requires a retrial on the merits. If we were to elect to not address the suppression issue and remand the OWI conviction to the district court, then not only would the suppression issue and the timeliness issue be included in the remand, we would be required to preserve Warren's ineffective-assistance claim on the driving while revoked conviction for a possible postconviction action in a second case, adding to and complicating future litigation. *Ortiz*, 766 N.W.2d at 250.

Thus, we are not convinced we should decline to exercise our authority under section 814.7(3) if the record is adequate to decide the claim on direct appeal. Upon our de novo review, we find the record adequate to decide the claim and proceed to the merits.

### *2.* *The Merits*

To succeed on her ineffective-assistance-of-counsel claim, Warren must establish "(1) that counsel failed to perform an essential duty and (2) that prejudice resulted." *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020); *accord Strickland v. Washington*, 466 U.S. 668, 687 (1984). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)). A failure to register meritless arguments or motions does not amount to ineffective assistance of counsel. *See State v. Lilly*, 930 N.W.2d 293, 298 (Iowa 2019); *State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015).

We thus turn to whether a motion to suppress would have been meritorious

if pursued on the grounds argued on appeal. Warren generally argues she was subjected to an unconstitutional seizure. We likewise review constitutional suppression issues de novo. *State v. Fogg*, 936 N.W.2d 664, 667 (Iowa 2019). "[W]e independently evaluate the totality of the circumstances as shown by the entire record." *State v. Smith*, 919 N.W.2d 1, 4 (Iowa 2018) (alteration in original) (quoting *State v. White*, 887 N.W.2d 172, 175 (Iowa 2016)). "Each case must be evaluated in light of its unique circumstances." *Fogg*, 936 N.W.2d at 667 (quoting *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018)).

"The Fourth Amendment [to] the United States Constitution," as applied to the states by the Fourteenth Amendment, "and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures." *State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001); *accord State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). Evidence obtained following a violation of these constitutional protections is generally inadmissible at trial. *See Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963); *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961); *Naujoks*, 637 N.W.2d at 111.

Warren essentially argues Engle had no basis to make contact with her because he observed "a *completed* parking infraction" as opposed to an ongoing traffic violation. We start our analysis with a threshold question: *Who* is liable for a parking violation? We find the answer in statutory provisions. "No *person* shall stop, stand or park a vehicle" in any one of fifteen statutorily specified places, except under specified circumstances, none of which are applicable here. Iowa Code § 321.358 (emphasis added). A "'[p]erson' means every natural person," including various entities. *Id.* § 321.1(52). An "'[o]perator' or 'driver' means every

person who is in actual physical control of a motor vehicle upon a highway."[14]  *Id.*
§ 321.1(48).

Engle saw Warren drive a car, park it perpendicular to a road, and exit the vehicle.  He believed she had parked the car illegally pursuant to section 321.358.[15]  She is a person who was the driver of a motor vehicle on a highway who parked a vehicle.  If the car was parked in violation of section 321.358 and she was the person who parked the car, she violated a criminal statute directive: "no person shall . . . park a vehicle" in a proscribed place.  *Id.* § 321.358.  The clarity of those provisions is not diminished by the possibility an owner of a vehicle may have responsibility for a parking violation under certain circumstances.  *See id.* § 321.484(2).  This liability scheme makes sense.  If the driver is at the illegally parked car or easily and readily identifiable, liability should and does rest with the driver.  In reality, illegally parked cars may be observed by law enforcement officers when no driver is found in the area.  On such occasions, by simply "running the license plate" an officer can identify the registered owner and leave a parking

---

[14] "'Street' or 'highway' means the entire width between property lines of every way or place of whatever nature when any part thereof is open to the use of the public, as a matter of right, for purposes of vehicular traffic."  Iowa Code § 321.1(78).

[15] On appeal, Warren's ineffective-assistance claim rests on her contentions that trial counsel failed to file a motion to suppress: "The completed parking violation did not authorize Officer Engle to seize Ms. Warren and question her," and the stop was unlawfully extended.  She does not claim trial counsel should have challenged whether there was a parking violation.  Warren's own recitation of the facts states: "Ms. Warren pulled her vehicle halfway into a driveway—leaving the rear portion of the vehicle sticking out into the street—exited her car and walked away from the vehicle towards a residence."  Footage from the officer's body camera confirms that.  There is no dispute she violated Iowa Code section 321.358.  Thus, there is no need for further record development concerning how or where the car was parked.

citation in the name of the owner on the windshield of the illegally parked car.[16] Warren seems to suggest that should have been Engle's course of action.

Officer Engle first approached Warren concerning a parking violation. A parking violation is a simple misdemeanor, criminal offense. *See id.* § 321.482. The inclusion of certain simple misdemeanor offenses in the statutory schedule of fines under sections 805.8 and 805.8A was done by the legislature in order to make uniform and simplify the punishment. *See State v. Butler*, 706 N.W.2d 1, 3 (Iowa 2005); *see also City of Sioux City v. Jacobsma*, 862 N.W.2d 335, 354 (Iowa 2015). Scheduled violations of state law under section 805.8A are simple misdemeanor criminal offenses. Furthermore, a law enforcement officer has the authority to arrest the offender for a scheduled violation of chapter 321 but may issue a citation in lieu of arrest. *See State v. Orozco*, 573 N.W.2d 22, 24–25 (Iowa 1997); *see also* Iowa Code § 805.6.[17]

The case of *Davis v. City of Albia* illustrates an application of the foregoing principles:

> An arrest without a warrant may be made by a peace officer for a public offense committed in the officer's presence. Iowa Code § 804.7. "A public offense is that which is prohibited by statute and is punishable by a fine or imprisonment." *Id.* at § 701.2. A peace officer may issue a citation in lieu of a warrantless arrest, which is common practice where a scheduled fine is the penalty, but is not required to. *Id.* at § 805.1(1). *See State v. Orozco*, 573 N.W.2d 22, 25 (Iowa 1997) (peace officer has authority to make an arrest for a scheduled traffic violation). Whether to make an arrest instead of issuing a citation is within the peace officer's discretion. *See State v. Adams*, 554 N.W.2d 686, 690 (Iowa 1996).

---

[16] We need not and do not decide if, under the circumstances of this case, an owner would be liable for paying a fine upon issuance of a citation to the owner if the owner was not the person who parked the car illegally.

[17] As a practical matter, parking violations typically result in issuance of a citation.

> Davis' truck was parked in a persons with disabilities parking space. The truck had a rearview mirror in the "driver's compartment." Davis did not hang the placard from the mirror as required by the DOT rule, but put it on the dashboard. There was thus probable cause to believe Davis had committed the misdemeanor public offense of improper use of a persons with disabilities parking permit. The offense occurred in [the officer's] presence and he could therefore make a warrantless arrest of Davis without violating either Iowa law or the Fourth Amendment.

434 F. Supp. 2d 692, 703 (S.D. Iowa 2006) (involving a suit alleging unlawful arrest and excessive force).

Iowa has no case law directly on point with the facts of this case, so we will examine cases from other jurisdictions for guidance. Warren cites two cases from other jurisdictions in support of her position that "parking violations do not supply reasonable suspicion or probable cause for a seizure." Both of those cases are readily distinguishable. The first contemplates a situation in which law enforcement observed a commercial vehicle illegally parked in the fire lane of a mall and, instead of placing a citation on the unattended vehicle, waited for the owner to return and personally serve him with a citation. *State v. Medlar*, 638 N.E.2d 1105, 1105–06 (Ohio Ct. App. 1994). When the driver returned, the officer tried to get his attention by sounding an air horn and shining a spotlight. *Id.* at 1106. The driver did not notice, and he got in the vehicle and drove away. *Id.* The officer followed the vehicle and initiated a traffic stop; the driver was ultimately charged with driving under the influence. *Id.* The Ohio Court of Appeals concluded that waiting for the parking offender was unreasonable because the officer could have simply issued a citation and placed it on the windshield. *See id.* at 1109–10.

The Ohio Court of Appeals has itself distinguished *Medlar* from a situation in which an illegally parked vehicle is occupied, concluding an encounter was

appropriate when an officer observed an occupied vehicle engaging in a parking violation. *State v. Eason*, 69 N.E.3d 1202, 1210 (Ohio Ct. App. 2016), *appeal denied*, 149 Ohio St. 3d 1406 (Ohio 2017). In that case, an officer observed a vehicle in violation of an overnight parking ban. *Id.* at 1208. The vehicle was running, the driver's side door was ajar, and an individual was seated in the driver's seat. *Id.* at 1205. Officers encountered the individual, who was sleeping, woke him up, and asked him to step out of the vehicle, after which the officers observed signs of impairment. *Id.* at 1205–06. Following standard field sobriety testing and an inventory search of the vehicle, the defendant was charged with multiple crimes. *Id.* at 1206. On appeal following the denial of his motion to suppress, the defendant argued the officers had no basis to remove him from his vehicle because his violation of the overnight parking ban only authorized the officers to issue a parking violation notice and the infraction did not warrant further investigation. *Id.* at 1207–08. The court of appeals concluded the officer's observation of the parking violation "served as a lawful basis to stop the vehicle" and justified the officers' request that the defendant exit the vehicle. *Id.* at 1210. The court distinguished the situation from *Medlar*, noting waiting for the driver of an unoccupied vehicle when a citation could be left on the car is unreasonable, but encountering an individual who is observed to have committed the parking violation is not. *Id.* at 1210–11.

Similarly, in *State v. Jones*, the Ohio Court of Appeals considered a situation in which an officer observed an illegally parked vehicle with the rear driver's side door open and someone's "legs hanging out." No. 92820, 2009 WL 3490947, at *1 (Ohio Ct. App. Oct. 29, 2009). The officer pulled alongside the vehicle to "make

sure the person was okay" or "talk to him about the violation." *Id.* While speaking with the subject, the officer observed contraband. *Id.* The defendant was charged with drug offenses. *See id.* at *3. On appeal following the denial of his motion to suppress, the defendant argued a parking violation was an insufficient basis for the officer to encounter him. *Id.* at *4. The court of appeals disagreed concluding, "The fact that it was a parking violation, and not a traffic violation, is a distinction without a difference." *Id.* at *5.

The cases go on. In *State v. Nevins*, the Ohio Court of Appeals considered a situation in which an officer observed an illegally parked vehicle, activated his emergency lights, and pulled in behind the vehicle with the intention of issuing a parking ticket. No. 15-1968, 1997 WL 231198, at *1 (Ohio Ct. App. May 9, 1997). As he was pulling up, "the car started to pull off," so the officer activated his siren, upon which the vehicle immediately stopped. *Id.* The officer approached, advised of the reason for the stop, and asked for the motorist's driver's license, which the motorist could not provide. *Id.* The officer removed the driver from the vehicle and patted him down, "felt something hard in one of his pockets," and placed the defendant in his cruiser, being under arrest for failure to display a valid license. *Id.* When backup arrived, the defendant was removed from the cruiser and crack cocaine was located in his pocket. *Id.* An inventory search uncovered more of the substance. *Id.* The district court concluded the parking violation did not provide probable cause for an encounter and granted the defendant's motion to suppress. *Id.* at *2. The court of appeals reversed, noting the officer's observation of the parking violation provided the officer probable cause to stop the defendant. *Id.* at *3.

In *Flores v. City of Palacios*, an officer sought to detain a motorist for parking illegally. 381 F.3d 391, 393 (5th Cir. 2004). The officer shined a spotlight on the vehicle, several people fled, and the driver drove away. *Id.* She was eventually stopped and arrested for evading detention. *Id.* The driver sued the city for, among other things, unlawful arrest. *Id.* The district court denied summary judgment on the claim. *Id.* On appeal, the plaintiff argued "her arrest for evading detention was unconstitutional because [the officer] did not have reasonable suspicion to detain her in the first place." *Id.* at 402. The Fifth Circuit disagreed, concluding the parking violation provided the officer with authority to detain her. *Id.* at 403. The cases concluding parking violations are sufficient to warrant a seizure go on and on. *See, e.g.*, *United States v. Choudhry*, 461 F.3d 1097, 1101 (9th Cir. 2006) ("[T]he parking violation justified the investigatory stop of [the] vehicle."), *cert. denied*, 549 U.S. 1236 (2007); *United States v. Copeland*, 321 F.3d 582, 593–94 (6th Cir. 2003) (noting "an office has probable cause to stop a driver in the course of a parking violation"); *United States v. Thornton*, 197 F.3d 241, 248 (7th Cir. 1999) (rejecting claim that a parking violation is not a crime and is therefore insufficient to establish probable cause), *cert. denied*, 529 U.S. 1022 (2000); *Herring v. State*, 16 A.3d 246, 255 (Md. Ct. Spec. App. 2011) ("We believe a parking violation to be at least the functional equivalent to the stop of a moving vehicle in violation of the motor vehicle laws."); *People v. Ingram*, 312 N.W.2d 652, 654 (Mich. 1981) (concluding officer's request for defendant's driver's license for purpose of issuing parking citation was reasonable).

Here, different from *Medlar* and more similar to the other cases discussed, Engle physically observed Warren illegally park her vehicle, and Warren remained

in the immediate vicinity of her illegally parked vehicle when Engle made contact with her and told her she could not park there. The unreasonableness of the police conduct in *Medlar* flowed from the officer lying in wait, not the nature of the violation.

The second case cited by Warren also involved an unattended vehicle observed to be illegally parked by a parking monitor. *See State v. Holmes*, 569 N.W.2d 181, 182 (Minn. 1997). After discovering seven unpaid parking tickets on the vehicle, the monitor called for the vehicle to be towed pursuant to Minnesota law. *Id.* Before the tow truck arrived, the vehicle's occupant returned and asked that the vehicle not be towed. *Id.* at 182–83. The monitor refused and directed the defendant to retrieve his belongings from his car. *Id.* at 183. He was cooperative and did so but, because the monitor felt intimidated, she called for police assistance. *Id.* The officer who arrived thereafter asked for the defendant's identification, subjected him to a pat down, placed him in a locked police cruiser, and ultimately searched his vehicle, all after the monitor had already issued a parking citation. *Id.* at 183–84. The Minnesota Supreme Court found the parking violation was an insufficient basis for seizing the defendant and searching his vehicle because it all occurred after the citation was issued. *Id.* at 185, 189. We find *Holmes* inapplicable to the case at hand. It merely stands for the proposition that a police encounter must end after the reason for it is completed, a now fundamental principle in search and seizure jurisprudence. *See, e.g., Rodriguez v. United States*, 575 U.S. 348, 350 (2015) ("[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures."); *In re Prop. Seized from*

*Pardee*, 872 N.W.2d 384, 392 (Iowa 2015) ("Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'" (alteration in original) (citation omitted)).  It does not stand for the proposition, Warren's general argument on appeal, that parking violations, as opposed to traffic violations, are legally insufficient to justify a seizure.  *See, e.g.*, *United States v. Hester*, 910 F.3d 78, 88 n.6 (3d. Cir. 2018) ("[T]he nature of the violation—whether traffic or parking—[is] merely a factor among many at issue . . . ."); *Haynes v. State*, 937 N.E.2d 1248, 1252–53 (Ind. Ct. App. 2010) (distinguishing *Holmes* and concluding a parking violation is a sufficient basis to conduct a seizure where an illegally parked car drives away before the officer can issue a ticket), *appeal denied*, 950 N.E.2d 1196 (Ind. 2011); *Rodell v. Comm'r of Public Safety*, No. A03-283, 2003 WL 22787606, at *1–2 (Minn. Ct. App. Nov. 25, 2003) (same), *appeal denied*, (Feb. 17, 2004); *see also United States v. Johnson*, 874 F.3d 571, 573–74 (7th Cir. 2017) (noting *Whren* "applies to parked as well as moving vehicles, and to parking violations as well as moving violations"), *cert. denied*, 139 S. Ct. 58 (2018).  Nor do the cases stand for the proposition there can be no contact for a "completed parking violation."

Here, as noted, Warren was in the immediate vicinity of her illegally parked vehicle when Engle made contact with her and told her she could not park there. We find the encounter was supported by a reasonable basis for the purpose of Engle advising Warren of the illegal nature of her parking.

Warren goes on to argue that, after advising her of the reason for the encounter, Engle impermissibly prolonged the seizure by asking for her license, registration, and proof of insurance, his receipt of which was allegedly

"unnecessary for the enforcement of the completed violation."  She argues the "violation could have been enforced by way of a citation placed on the vehicle." The law is clear that when the reason for a seizure is resolved and there is not a continuing basis for reasonable suspicion, it is constitutionally required that the subject be allowed to go his or her way without further ado.  *State v. Coleman*, 890 N.W.2d 284, 301 (Iowa 2017).  The dissent cites *Coleman* and questions, if the officer could have placed a citation on the vehicle and walked away, then why was there a continuing basis for the stop?

While we agree issuing a citation in the manner argued by Warren was doable, neither Warren or the dissent point us to authority that the argued procedure for enforcement was constitutionally or statutorily required, or that citing the owner should be preferred over citing the driver who actually committed the offense observed by a law enforcement officer.  Engle had sufficient grounds to issue a citation.  He could have verified the owner of it in his system and issued a citation to that person and left it on the car.  It was certainly possible that Warren was not the owner of the vehicle.  Having witnessed her illegally park the vehicle, it was certainly not unreasonable for Engle to request Warren's identification to issue the citation in her name.  In fact, having observed Warren illegally park the vehicle, Engle had statutory authority to arrest Warren.  *See* Iowa Code § 804.7(1), (2); *Orozco,* 573 N.W.2d at 25.  Under the unique circumstances of this case, we find Engle's request for Warren's identification and the continuing seizure for that purpose was reasonable, which is all that is constitutionally required.  *See* U.S. Const. Amend. IV; Iowa Const. art. I, § 8.  Furthermore, additionally requesting

Warren's registration and proof of insurance did not impermissibly prolong the encounter.

Upon Warren opening her car door for the purpose of retrieving her identification, Engle immediately smelled marijuana, thus providing a reasonable ground for investigating additional criminal activity and a continuing basis for the seizure. In addition, when she produced her identification card to Engle, it indicated she did not have valid driving privileges and her privileges to drive had been suspended or revoked, thus also supporting a continuing basis for the seizure.

We conclude filing a motion to suppress based on the arguments urged on appeal would have been meritless and counsel was not ineffective as alleged. We expressly do not conclude that every police encounter flowing from a parking violation will meet the constitutional requirement of reasonableness. We acknowledge the dissent's concern for the possibility of "sweeping intrusions" by law enforcement in applying *Whren* to parking violations, but we find the conduct in this case satisfies the constitutional-reasonableness requirement.

## III. Conclusion

We reverse Warren's OWI conviction and remand the matter for a new trial on that count. We find trial counsel was not ineffective as alleged and thus affirm Warren's conviction of driving while revoked.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All judges concur except Vaitheswaran, J., who concurs in part and dissents in part, and Tabor and Doyle, JJ., who also concur in part and dissent in part.

**VAITHESWARAN, Judge** (concurring in part and dissent in part)

I concur in part and dissent in part. I concur in Part A of the majority opinion. I dissent from Part B of the majority opinion. I would decline to reach the ineffective-assistance-of-counsel issue for the reasons stated in footnote 18 of the second partial dissent.

**TABOR, Judge** (concurring in part and dissenting in part)

Can a parking violation justify a peace officer in seizing a motorist outside her car and conducting an investigation? Warren faults her counsel for not testing that proposition at trial. The majority rejects her claim of ineffective assistance, finding nothing to suppress because the officer acted reasonably under the Search and Seizure Clauses of the U.S. and Iowa Constitutions. I respectfully dissent on the ineffective-assistance-of-counsel issue.[18] In my view, it is ill-advised to reject Warren's complaint on direct appeal—and, in doing so, decide a question of

---

[18] First, I disagree with the majority that the "preferred" method for addressing Warren's ineffective-assistance claim is rejecting it on direct appeal. True, Iowa Code section 814.7(3) (2018) offers two choices for resolving ineffective-assistance claims: decide on direct appeal or preserve for postconviction relief (PCR). But here we have a third option. Because we remand for a new trial on the OWI count, we need not address whether counsel should have moved to suppress evidence of the seizure. *See State v. Pals*, 805 N.W.2d 767, 771 n.1 (Iowa 2011) (declining to address counsel's failure to move for speedy-trial dismissal because court reversed on other grounds); *State v. Divis*, No. 15-1123, 2016 WL 4803749, at *8 n.3 (Iowa Ct. App. Sept. 14, 2016) (declining to reach claim alleging counsel should have moved to suppress because court reversed on evidentiary grounds). But if—as the majority contends—those cases are not persuasive here, the better approach would be to preserve the issue for PCR. *See State v. Carroll,* 767 N.W.2d 638, 641 (Iowa 2009) ("We will address on direct appeal claims of ineffective assistance of counsel only if we determine the development of an additional factual record would not be helpful and these elements can be decided as a matter of law.").

The majority cites *State v. Hollie*, as an example of our court reaching a suppression issue, raised in the context of ineffective assistance, on direct appeal. 854 N.W.2d 695 (Iowa Ct. App. 2013). But in *Hollie* trial counsel moved to suppress and the district court held a suppression hearing. 854 N.W.2d at 697. Counsel's ineffectiveness was the untimely filing of the meritorious motion. *Id.* at 698. Unlike *Hollie*, Warren had no chance to make a record specific to the suppression issues.

As for the driving-while-revoked conviction, Warren may address counsel's performance in relation to that offense in a PCR action. Nothing prevents bifurcated treatment of the convictions. In fact, if this case had been appealed after July 1, 2019, we would have been without statutory authority to address the ineffective-assistance claim on direct appeal. *See State v. Trane,* 934 N.W.2d 447, 464–65 (Iowa 2019) (discussing amendment to section 814.7(3)).

first impression in Iowa—without a full airing of the facts bearing on the suppression challenge.[19]

But if compelled to decide the question on the record we do have, I would find Warren proved by a preponderance of the evidence that her counsel breached a duty by not moving to suppress and prejudice resulted. "Subject to a few carefully drawn exceptions, warrantless searches and seizures are per se unreasonable." *State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004). "The State has the burden to prove by a preponderance of the evidence" that Warren's seizure was justified. *Id.*; *State v. Baker*, 925 N.W.2d 602, 610–11 (Iowa 2019). The State cannot satisfy its burden: Warren's parking violation did not authorize police to seize her in place of issuing a ticket.

Just to be clear at the outset, police did seize Warren. *Cf. State v. Fogg*, 936 N.W.2d 664 (Iowa 2019) (finding no seizure where officer did not activate emergency lights or engage in "authoritative behavior"). Neither the State nor the majority contends otherwise. And that seizure had nothing to do with her driving. True, Officer Engle testified at the bench trial that he first noticed her car "accelerating at a high rate" of speed. But he acknowledged on cross examination she was not speeding. Officer Engle did not articulate that Warren violated any traffic law or committed any other crime. Yet two police cars arrived at the scene. Their flashing emergency signals bathed the officers' encounter with Warren in

---

[19] The majority's concern about timeliness (or good cause for untimeliness) of a motion to suppress under Iowa Rule of Criminal Procedure 2.11(4) may be addressed by the district court on remand. *See generally State v. Jones*, No. 05-0316, 2006 WL 133009, at *2 (Iowa Ct. App. Jan. 19, 2006) (entertaining possibility that ineffective assistance of prior counsel could be good cause for untimely motion to suppress).

alternating red and blue light, as the officers circled her car, using flashlights to look inside the windows.

Our view of their investigation emerges from Officer Engle's body camera footage, which the State offered into evidence at the bench trial. The video starts off with no sound: Warren is standing outside her closed car door, holding open her wallet.[20] An officer extracts her identification card. The officers apparently ask Warren if she has used marijuana, because when the audio begins she answers: "Yeah we smoked, at least I'm honest." Officer Engle then asks for her registration and insurance. At this point, Warren opens the driver's side door and reaches across the front seat to find those documents in the glove box. As she does so, she says: "[I]t does smell like weed." The officers then launch their OWI inquiry.

On this record, because the officer could have issued a parking ticket without seizing Warren, trial counsel was ineffective in not moving to suppress evidence discovered during the investigation that followed that initial seizure.[21] As Warren urges on appeal, the Minnesota Supreme Court's analysis in *State v. Holmes* is apt. 569 N.W.2d 181 (Minn. 1997). *Holmes* held "a police officer who

---

[20] Officer Engle's trial testimony is somewhat at odds with the video footage. He testified Warren walked to her car and "grabbed her Iowa ID." But the video shows Warren has her ID and the car door is closed until the officers ask for her registration and proof of insurance. The order of the questioning matters to the suppression issues, which is why a more complete record is necessary to decide this matter fairly.

[21] Case law from Iowa, as well as other jurisdictions, should have alerted counsel this suppression issue was "worth raising." *See State v. Brown*, 930 N.W.2d 840, 855 (Iowa 2019); *State v. Schoelerman*, 315 N.W.2d 67, 72 (Iowa 1982) (explaining counsel must exercise reasonable diligence in finding error which includes consulting cases from other jurisdictions).

merely has reasonable suspicion that a *parking* violation has occurred cannot seize an individual for the purpose of investigation." *Id*. at 185.

The majority rejects *Holmes*, reasoning it "stands for the proposition that a police encounter must end after the reason for it is completed." That reading is too truncated. When read in full, the language in *Holmes* is broader. The Minnesota court noted: "[P]olice officers typically enforce parking violations by applying a ticket to the parked car." *Id*. And it advised:

> A police officer who has probable cause to believe that a person has committed a parking violation can stop the person only if the stop is necessary to enforce the violation, for example, if a person is attempting to drive off with an illegally parked car before the officer can issue the ticket.

*Id*. The logic in *Holmes* applies here. Stopping Warren was unnecessary to enforce the parking violation.

Plus, cases on the permissible scope of investigations should also have sparked a suppression motion. *See, e.g.*, *Rodriguez v. United States*, 575 U.S. 348, 350 (2015); *In re Pardee*, 872 N.W.2d 384, 396 (Iowa 2015); *State v. Coleman*, 890 N.W.2d 284, 301 (Iowa 2017). Collectively, these cases prohibit officers from extending an investigative stop beyond the time needed to handle their core mission. Officer Engle's stated mission was to enforce a parking violation. Checking on Warren's license, registration, and insurance was unreasonable because it exceeded that mission.

Again to be clear, neither the State nor the majority rely on reasonable suspicion that criminal activity was afoot based on the totality of circumstances confronted by the officers when they first seized Warren. Rather, the entire justification for the seizure is enforcement of a parking violation. *See* Iowa Code

§ 321.358(13) (prohibiting a person from stopping or parking a vehicle "at any place where official signs prohibit stopping or parking").[22]  This singular rationale separates Warren's case from a federal case cited by the majority, *United States v. Hester*, 910 F.3d 78, 88 n.6 (3d Cir. 2018) (explaining "nature of the violation—whether traffic or parking—was merely one factor among many at issue, and we do not today address whether a mere parking violation would be sufficient to support reasonable suspicion").  In *Hester*, the court found an officer had reasonable suspicion to detain passengers in a vehicle because it was illegally idling near a crosswalk in front of a store with a known history of narcotics activity, close to midnight, in a high-crime area of Newark.  910 F.3d at 87–88.  The officer did not articulate similar factors here.

Unlike *Hester*, the majority holds Officer Engle's initial seizure of Warren was "supported by a reasonable basis for the purpose of Engle advising Warren of the illegal nature of her parking."  At the same time, the majority acknowledges the officer could have verified the owner of the vehicle, issued a citation to that person, and left it on the car.  So why was the seizure reasonable?

The State contends the seizure was reasonable because Officer Engle had probable cause to believe Warren violated section 321.358(13).[23]  The State relies on *United States v. Johnson* for the proposition that a parking violation—like any minor traffic violation—provides probable cause to stop a motorist.  *See* 874 F.3d

---

[22] Again emblematic of our undeveloped record, no evidence supports a finding that "official signs" prohibited parking on this residential street.  On the video, Warren tells the officers she planned to go inside the house and ask her cousin to move his truck so she would have room to park in the driveway.

[23] The officer issued Warren a citation for this scheduled violation, but the State later dismissed the charge.

571 (7th Cir. 2017). The *Johnson* majority upheld a seizure when "the car was stopped 7 or 8 feet from a crosswalk" and issuing a ticket necessarily entailed "a brief seizure of the car and its occupants." [24] 874 F.3d at 572–73. During that seizure, the officer saw a gun on the car's floor, which led to Johnson's arrest. *Id.* at 573.

Unlike *Johnson*, it was unnecessary for Officer Engle to seize Warren to enforce the parking violation. As the majority acknowledges, the officer could have left a citation on Warren's car. *See City of Des Moines v. Iowa Dist. Ct.*, 431 N.W.2d 764, 767 (Iowa 1988) (rejecting argument that "windshield copies of traffic citations cannot constitute a legal process sufficient to invoke the court's jurisdiction"). Instead, Officer Engle "made contact and advised her that she could not park her vehicle that way."[25] He also prolonged the encounter by asking her "if she had her license, registration, and proof of insurance." The majority holds it was "not unreasonable" to request Warren's identification to issue the citation in her name in case she was not the registered owner of the vehicle.[26]

---

[24] Two judges dissented in *Johnson*, objecting to the majority's extension of *Whren v. United States*, 517 U.S. 806 (1996), to allow "this pretextual seizure based on the suspected parking violation." 874 F.3d at 575 (Hamilton, J., dissenting). The dissenters found that extension defied the reasonableness standard of the Fourth Amendment. *Id.*

[25] The record does not show the officers had a pressing safety-related concern about the precarious nature of Warren's parking. They pulled in behind her. They did not have the car moved during their investigation. After arresting Warren, Officer Engle handed her keys to an occupant of the house who agreed to take care of the car.

[26] The majority highlights the driver's liability for parking violations under section 321.358. Yet the majority acknowledges vehicle owners are responsible for parking violations in most situations. *See* Iowa Code § 321.484(2) (stating owners "shall not be held responsible" for parking violations if the owner produces a copy of a lease or rental agreement for the vehicle). Likewise, owners may be asked to identify the person who drove their vehicle if officers have reasonable

Let's think about what that holding means. Even if officers have all the information they need to issue a parking citation, they can now seize any person in the vicinity of their illegally parked car and ask for identification. This holding reaches even further than *Johnson*, where the officer saw the passenger in the illegally parked car "make movements that led him to infer that [he] was hiding something."[27] 874 F.3d at 573. In Iowa, no furtive behavior would be necessary. Every errant parker could be seized.

And would the majority's holding really affect only drivers intercepted in the vicinity of their recently parked cars? That distinction seems important to the majority in distinguishing *Medlar*. There, the Ohio court found a constitutional violation when an officer waited five to ten minutes for the driver of a commercial vehicle parked in a mall's fire lane to return before seizing the driver. 638 N.E.2d at 1109–10. Yet the majority's distinction offers no legal difference. Why was it more reasonable to stop Warren as she walked away from her illegally parked car than it would be for officers to bide their time and seize her as she returned?

---

cause concerning a moving violation; but not so for parking infractions. *See id.* § 321.484(3). Given that different statutory treatment of moving and parking violations, Officer Engle's seizure of Warren was unreasonable. As the Ohio court noted in *State v. Medlar*, "It is neither necessary nor requisite that the person issuing the parking citation see or record the information contained on the driver's license." 638 N.E.2d 1105, 1108 (Ohio Ct. App. 1994).

[27] Fourth Amendment scholars envisioned this scenario under the *Johnson* holding: "a motorist can pull into a metered parking space, begin searching in their car for change to put into the meter, and end up being seized by the police because the meter was expired and the act of looking for meter change could be interpreted by the officer as furtive behavior." *See* Stephen D. Hayden, *"Parking While Black": Pretextual Stops, Racism, Parking, and an Alternative Approach*, 44 S. Ill. U.L.J. 105, 142 (2019) (borrowing example from Howard University amicus curiae brief in favor of petition for certiorari in *Johnson v. United States*, No. 17-1349, 2018 WL 1910945 (Apr. 23, 2018)).

In stepping away from *Medlar*, the majority points to a more recent Ohio case, *State v. Eason*, 69 N.E.3d 1202, 1208 (Ohio Ct. App. 2016). Unlike *Medlar,* the vehicle was occupied when the officer in *Eason* observed the parking violation. *Eason*, 69 N.E.3d at 1208 (describing the scene: "he pulled up to the vehicle in which appellant was sitting because the car was illegally parked, the driver's door was ajar, and the vehicle's engine was running"). The officer could not tell if Eason "was alive or in need of medical assistance or simply sleeping." *Id.* That scenario is a far cry from the officer's seizure of Warren outside her car when he could have left a ticket on the windshield. Similarly, the other out-of-jurisdiction cases string-cited by the majority involve defendants who were occupants of illegally parked cars. In those instances, like *Johnson* discussed above, addressing the parking violations necessarily entailed a seizure.

Over and above asking for identification, under the majority's holding, police can ask any person who illegally parks for vehicle registration and proof of insurance. Neither are necessary to the mission of issuing a parking ticket. The majority contends asking for that information did not impermissibly prolong the police encounter with Warren. But it did. The demand for that information occasioned her going back into her car, which smelled of burnt marijuana.[28]

"[A]bsent reasonable suspicion of other criminal activity, the officer's mission is to address the traffic infraction and that mission may take no longer than

---

[28] Granted, an investigative detention may grow out of a seizure justified on different grounds if the officers develop reasonable suspicion of criminal activity to expand their investigation. *See State v. Knight*, 853 N.W.2d 273, 278 (Iowa Ct. App. 2014). But officers may only expand the scope and duration of a stop where they develop new reasonable suspicion before any impermissible extension of the stop. *See Pardee*, 872 N.W.2d at 396.

is necessary." *State v. Salcedo*, 935 N.W.2d 572, 580 (Iowa 2019) (citing *Rodriguez*, 575 U.S. at 354). What is necessary to address a parking violation differs from what is necessary to address a moving violation. As the majority concedes, it was unnecessary to Officer Engle's mission to seize Warren at all, much less to extend their encounter by asking for identification, vehicle registration, and proof of insurance.

When recently considering whether pretextual traffic stops violate the Iowa Constitution, our supreme court highlighted protections in state law meant to "curtail law enforcement's abuse of authority during traffic stops." *Brown*, 930 N.W.2d at 849. Listed first among those protections was the requirement that an officer allow a motorist to leave "when the reason for a traffic stop is resolved and there is no other basis for reasonable suspicion." *Id.* (citing *Coleman*, 890 N.W.2d at 301). Under *Brown* and *Coleman*, if Officer Engle's only mission was to enforce the parking regulation, he was required to let Warren leave upon issuing a citation. He lacked authority to seize her or to extend the seizure by asking her unrelated questions.

The police conduct suggests Warren's parking violation was pretext for a more expanded investigation. For instance, at the bench trial, Officer Engle testified: "There was a police officer that pulled up behind her and turned his lights on before I was there. I think my back lights were on, and then I made contact." This show of authority echoes the situation described by the *Johnson* dissent:

> The officers swooped in on the car, suddenly parking close beside and behind it with bright lights shining in from both directions, opening the doors, pulling all the passengers out and handcuffing them. The district court found, and the majority and I agree, that the passengers were seized as the officers swarmed them, *before* the

officers had any sign that one passenger had a firearm. The sole basis for this intrusive and even terrifying "investigatory stop"? A suspected parking violation . . . for parking too close to an unmarked crosswalk.

874 F.3d at 575 (Hamilton, dissenting). As the *Johnson* dissent observed: "The police tactics here would never be tolerated in more affluent neighborhoods." *Id.* at 576. Those dissenters believed extending *Whren* to parking violations was "arguably defensible" but unreasonable because it would erode Fourth Amendment protections.

Back home, the majority of our court acknowledges the concern that applying *Whren* to parking violations invites widespread intrusions against individual liberty. But the majority finds that concern overblown. It professes to limit its holding to "the unique circumstances of this case" and cautions not "every police encounter flowing from a parking violation will meet the constitutional requirement of reasonableness." Yet the majority's extension of *Whren* to parking violations contains no limiting principles—except perhaps the distinction from *Medlar* where the officer lied in wait for the driver. That stated limitation is unlikely to deter law enforcement from vigorously pursuing this avenue of investigation. *See Brown*, 930 N.W.2d at 906–10 (Appel, J., dissenting) (discussing judicial concern over consequences of *Whren*); *see also* Wayne LaFave, Search & Seizure § 1.4(f) (5th ed.) ("The effect of *Whren* . . . is that . . . the pretext doctrine has disappeared from Fourth Amendment jurisprudence, thus leaving citizens without adequate protection against arbitrary seizures and searches.").

One final note: Warren emphasizes her violation was a *completed* parking infraction. *See* Iowa Code § 805.8A(1)(a) (classifying parking violations under

section 321.358 as scheduled violations subject to a fine of five dollars). In *Pals*, our supreme court described federal courts as divided on whether the Fourth Amendment per se prohibits police from seizing a motorist based only on reasonable suspicion of "a mere completed misdemeanor." 805 N.W.2d at 774 (comparing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004), with *United States v. Hughes*, 517 F.3d 1013, 1017–18 (8th Cir.2008)). But even those courts applying a balancing test often find reasonable suspicion of a completed misdemeanor to be insufficient to justify a seizure under the Fourth Amendment. *See Hughes*, 517 F.3d at 1018 (finding government's interest in investigating prior criminal trespass did not outweigh individual's interest in being "free from arbitrary interference by police"). This line of cases also should have prompted defense counsel to file a motion to suppress.

On this record, I would find the officer acted unreasonably in seizing Warren to investigate a parking violation. The majority admits the officer didn't need to stop her to issue the citation. His mission in issuing a parking ticket did not require her to provide identification, vehicle registration, or proof of insurance. By not moving to suppress, counsel breached an essential duty and his client suffered prejudice. If it is proper to reach the suppression issue, both convictions should be reversed.

Doyle, J., joins this partial dissent.